STATE of Iowa, Appellee,

v.

Larry Joe KEETON, Appellant.

No. 04–1738.

Supreme Court of Iowa.

March 3, 2006.

Linda Del Gallo, State Appellate Defender, and Shellie L. Knipfer, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Ann E. Brenden, Assistant Attorney General, and Jennifer Miller, County Attorney, for appellee.

CADY, Justice.

In this appeal, the defendant claims there was insufficient evidence to support the assault element of his conviction for second-degree robbery of a convenience store, during which the store clerk confronted him at the door of the store as he

was attempting to exit following a theft. In resolving the issue, the State asks that we declare the crime of assault to be a general-intent offense and submits a well-researched and thorough brief to support its position. We conclude substantial evidence supports the conviction and decline to consider the additional question raised by the State. We affirm the judgment and sentence of the district court.

## I. Background Facts and Proceedings

On March 28, 2004, Larry Keeton entered a convenience store in Marshalltown and purchased a pack of cigarettes. When the store clerk opened the cash register drawer to make change, Keeton reached over the counter and grabbed the twenty-dollar bills from the register. He stated: "I'll take that." Keeton then attempted to exit the store, but the clerk rushed to the door and blocked his path by standing in front of the double doors. She also tried to grab the cash from Keeton's hand as he approached, but he would not release the money from his hand. Their hands touched when she attempted to retrieve the money. Keeton then briefly backed away from the door and extended his arm. The clerk realized she could not keep him in the store until police arrived, and stepped aside to allow Keeton to leave the store. As he exited through the door, she snatched the hat from his head in anger. The incident was recorded by surveillance video.

Keeton was arrested and charged with robbery in the second degree in violation of Iowa Code section 711.1(1) (2003). He waived his right to a jury trial, and the case proceeded to a bench trial. The district court found Keeton guilty of second-degree robbery and sentenced him to a term of imprisonment not to exceed ten years.

Keeton appeals. He claims there was insufficient evidence presented at trial to support the assault element of robbery.

## II. Standard of Review

■ "We review sufficiency-of-the-evidence claims for correction of errors at law. We uphold a verdict if substantial evidence supports it. 'Evidence is substantial if it would convince a rational fact finder that the defendant is guilty beyond a reasonable doubt.' Substantial evidence must do more than raise suspicion or speculation. We consider all record evidence not just the evidence supporting guilt when we make sufficiency-of-the-evidence determinations. However, in making such determinations, we also view the 'evidence in the light most favorable to the State, including legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'"

*State v. Williams*, 695 N.W.2d 23, 27 (Iowa 2005) (quoting *State v. Quinn*, 691 N.W.2d 403, 407 (Iowa 2005)).

## III. Discussion

■ A sufficiency-of-evidence claim on appeal not only requires us to review all the relevant evidence, but also the governing law. Ultimately, we must apply the law to the evidence to determine if the evidence is sufficient to support the conviction.

Section 711.1 defines robbery as follows:

A person commits a robbery when, having the intent to commit a theft, the person does any of the following acts to assist or further the commission of the intended theft or the person's escape from the scene thereof with or without the stolen property:

1. Commits an assault upon another.

2. Threatens another with or purposely puts another in fear of immediate serious injury.

3. Threatens to commit immediately any forcible felony.

It is immaterial to the question of guilt or innocence of robbery that property was or was not actually stolen.

Iowa Code § 711.1. The State charged Keeton under the first paragraph of the statute, commission of an assault. The State claimed at trial that Keeton committed an assault on the store clerk in furtherance of his escape from the convenience store.

We look to the definition of assault in section 708.1 to consider whether a robbery occurred under section 711.1(1). *See State v. Spears,* 312 N.W.2d 79, 80 (Iowa 1981). Section 708.1 provides, in relevant part:

An assault as defined in this section is a general intent crime. A person commits an assault when, without justification, the person does any of the following:

1. Any act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act.

2. Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act.

3. Intentionally points any firearm toward another, or displays in a threatening manner any dangerous weapon toward another.

Iowa Code § 708.1. In this case, the State relied upon the first two alternatives of assault, and the district court found Keeton committed assault under both alternatives.

Although the State asks us to resolve the sufficiency-of-evidence claim by considering section 708.1(1)-(2) to only require a general intent element, the specific issue on appeal in this case only requires us to decide if the evidence in the case satisfies the statutory elements of the crime of assault. This question can be decided without considering whether the statutory language used to define the crime of assault requires a specific or general intent. *See In re M.S.,* 10 Cal.4th 698, 42 Cal. Rptr.2d 355, 896 P.2d 1365, 1383–84 (1995) (Mosk, J., concurring) ("Indeed, 'specific intent' and 'general intent' do not define criminal mental states. Rather, they are essentially 'labels' attached to particular crimes to identify them as admitting ('specific intent') or not admitting ('general intent') the defense of voluntary intoxication. There is no need to attach one of the labels here. The issue is not implicated before this court. Indeed, there is a need *not* to attach either label. 'Specific intent' and 'general intent' have been ' "notoriously difficult ... to define and apply," ' and 'have proved to be mischievous.' " (Citations omitted.)); Scott A. Anderegg, Note, *The Voluntary Intoxication Defense in Iowa,* 73 Iowa L.Rev. 935, 935 (1988) (noting confusion regarding concepts of specific and general intent); *see also* Model Penal Code § 2.02, at 230 & n. 3 (1985) (stating the Model Penal Code employed four culpability distinctions in lieu of the specific-intent/general-intent dichotomy, "which has been such an abiding source of confusion and ambiguity in the penal law").

We understand the need for answers to important legal questions faced by the bench and bar. However, fundamental principles of judicial restraint limit our role to deciding each case on the issues presented, and we refrain from deciding

issues not presented by the facts. *Williams,* 695 N.W.2d at 30. We explained the need to resolve legal issues based on facts in *Williams:*

> [W]e recognize the law to be an evolving process that often makes the resolution of legal questions a composite of several cases, from which appellate courts can gain a better view of the puzzle before arranging all the pieces. The wisdom of this process has been revealed time and again, and we continue to subscribe to it today.

*Id.*

Accordingly, we decline to revisit the issue whether assault is a general- or specific-intent crime in this case. Regardless of which label is attached to the offense, the State was still required to prove Keeton possessed the mens rea required by the statute, and we turn to decide if it did so. *State v. Taylor,* 689 N.W.2d 116, 132 (Iowa 2004) ("[R]egardless of whether assault is a specific intent or general intent crime, the State must prove by evidence beyond a reasonable doubt that the defendant intended his act to cause pain or injury to the victim or to result in physical contact that would be insulting or offensive to the victim."); *State v. Bedard,* 668 N.W.2d 598, 601 (Iowa 2003) ("The intent elements discussed in *Heard* remain as part of the definition of the offense and continue to be matters that the State must prove by evidence beyond a reasonable doubt."), *cert. denied,* 543 U.S. 932, 125 S.Ct. 336, 160 L.Ed.2d 234 (2004). The State had to prove that Keeton did an act he intended either: (1) to cause the clerk pain or injury, (2) to make insulting or offensive physical contact with the clerk, or (3) to make the clerk fear immediate painful, injurious, insulting, or offensive physical contact. Iowa Code § 708.1(1)-(2). We turn to the evidence in the record that bears upon this intent element.

Keeton testified that he did not intend to touch, hurt, insult, or offend the clerk. However, intent required by the statute "may be inferred from the circumstances of the transaction and the actions of the defendant." 21 Am.Jur.2d *Criminal Law* § 128, at 214–15 (1998); *see also Taylor,* 689 N.W.2d at 132 ("[A]n actor will ordinarily be viewed as intending the natural and probable consequences that usually follow from his or her voluntary act." (citing *Bedard,* 668 N.W.2d at 601)).

We begin by considering the actions of the parties to the incident. The surveillance video of the incident offered into evidence at trial showed that the clerk blocked one of the double doors as Keeton tried to exit by standing in front of the door. After the clerk attempted to retrieve the money, Keeton moved in the direction of the other door to exit, and the clerk lunged in front of that door to block Keeton from leaving. Keeton then backed up and began to walk toward the clerk with his hand extended, holding the money. He then pulled his hand to his chest at the same time as the clerk moved off to the side of the doors to permit Keeton to exit.

This evidence could support an inference of intent to place the clerk in fear of immediate physical contact that would be painful, injurious, insulting, or offensive. Similarly, the evidence could support an inference that the actions of Keeton were intended to result in physical contact which would be insulting or offensive to the clerk. Keeton wanted to leave the store, and his outstretched hand could evidence his intent to push the clerk out of his path.

Furthermore, the testimony of Keeton and the testimony of the clerk at trial provided further evidence of the intent to support the conviction under the statute. The clerk testified she felt Keeton was

"bound and determined to keep the money," and she realized there was "no way" she could keep him from leaving. While this testimony is not dispositive, these perceptions are properly considered in determining intent. *See Spears,* 312 N.W.2d at 81 (stating the fact that the victim "may or may not have been afraid of the victim is not dispositive" and that the focus of the assault statute is on the defendant, not the victim); 6 Am.Jur.2d *Assault and Battery* § 18, at 25 (1999) ("Some courts have held that the requisite intent can be inferred from evidence that the complainant was in fear of imminent serious bodily injury, and that he felt it was the defendant's intention to so place him."). Moreover, Keeton acknowledged on cross-examination that he "would have pushed past [the clerk] and went out the door" if the clerk failed to move from the exit. Although Keeton tried to retract this testimony on redirect examination, it was nevertheless evidence of intent.

We conclude that the record, viewed in the light most favorable to the State, reveals substantial evidence to satisfy the intent element of the crime of assault under section 708.1(1) and (2). Furthermore, the same evidence supports the conclusion that Keeton committed an overt act in furtherance of that intent. *See* Iowa Code § 708.1 (requiring an act); *Heard,* 636 N.W.2d at 230 ("Assault requires an overt act." (citing *State v. Smith,* 309 N.W.2d 454, 457 (Iowa 1981))); 6 Am.Jur.2d *Assault and Battery* § 24, at 29 ("When an assault is defined as an attempt to commit a battery, the overt act, to be sufficient to support a charge of assault, must be a direct, ineffectual act toward the commission of a battery. When an unequivocal purpose of violence is accompanied by any act which, if not stopped or diverted, will result in personal injury, the execution of the purpose to commit a battery has begun and is enough to constitute a criminal assault."). The final element of assault—that Keeton had the apparent ability to do the act—is not disputed on appeal.

We understand Keeton's argument that he was only attempting to leave the store to complete his theft, not to commit an assault. Yet, this is not a case where proof of intent depends upon a single piece of evidence from which two reasonable inferences could be drawn. *See State v. Truesdell,* 679 N.W.2d 611, 618–19 (Iowa 2004) ("[W]hen two reasonable inferences can be drawn from *a piece* of evidence, we believe such evidence only gives rise to a suspicion, and, without additional evidence, is insufficient to support guilt." (Citations omitted; emphasis added.)). The multiple actions of the participants in this case and the inferences derived from those actions, as well as their testimony, are together sufficient to support a finding of the intent element of an assault under our statutory definition. The success of Keeton's claim at trial hinged on the facts as viewed by the fact-finder, and it is not for us to interfere with the finding made when supported by substantial evidence, even though the evidence may have also supported a finding favorable to the defendant. *See Chrysler Fin. Co. v. Bergstrom,* 703 N.W.2d 415, 418 (Iowa 2005) (" ' "Evidence is not insubstantial merely because we may draw different conclusions from it; the ultimate question is whether it supports the finding actually made, not whether the evidence would support a different finding." ' " (quoting *Fischer v. City of Sioux City,* 695 N.W.2d 31, 33–34 (Iowa 2005); citing 5 Am.Jur.2d *Appellate Review* § 666, at 340 (1995))); *State v. Axline,* 450 N.W.2d 857, 860 (Iowa 1990) (affirming because although the evidence could have supported a different conclusion than that reached by the district court, there was substantial evidence to support the conclusion actually reached).

Keeton does not challenge the sufficiency of the evidence on the other elements of robbery. Therefore, we need not consider them.

## IV. Conclusion

We conclude there was substantial evidence presented at trial that Keeton committed an assault on the clerk. We affirm his conviction for robbery in the second degree.

**AFFIRMED.**