**IN THE COURT OF APPEALS OF IOWA**

No. 14-1832
Filed May 6, 2015

**SADIE WASMUND,**
        Plaintiff-Appellee,

**vs.**

**JOSEPH R. WASMUND,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Johnson County, Stephen B.

Jackson Jr., Judge.

        Joseph Wasmund appeals the district court's ruling finding he committed

domestic abuse assault against Sadie Wasmund.  **REVERSED AND**

**REMANDED.**

        Nicholas J. Herbold of Pendleton & Herbold, L.L.P., Iowa City, for

appellant.

        Courtney Thomas-Dusing of Iowa Legal Aid, Iowa City, for appellee.

        Considered by Danilson, C.J., and Vaitheswaran and Doyle, JJ.

**DOYLE, J.**

Joseph Wasmund appeals from the district court's final protective order entered in Iowa Code chapter 236 (2013) proceedings, contending the record is insufficient to support the district court's determination he committed domestic abuse assault against his former spouse, Sadie Wasmund. Because a preponderance of the record evidence does not establish Joseph committed domestic abuse assault against Sadie, we reverse and remand for dismissal of the protective order.

### I. Background Facts and Proceedings.

The parties formerly were married and are the parents of one minor child. On May 27, 2014, Sadie filed a petition for relief from domestic abuse. Her petition stated that five days before, she went to Joseph's place of employment to exchange their child. She stated she asked him questions concerning their child, and "[h]e began swearing at [her]. [She] tried to leave with [the child]. [Joseph] physically blocked [her], shoved [the child], and shoved [her]."

On the day of the incident, law enforcement officials were contacted, and a report made. Sadie again told the officer Joseph shoved her and the child. The officer learned there was a surveillance camera in Joseph's employer's lobby, where the incident occurred. The officer reviewed the footage from the video and explained in his report:

> I watched the video that has no sound. Sadie and [the child] enter the building [of Joseph's employer] . . . and wait in the playroom. They talk near the playroom and [the child] runs out, [Joseph] is the only one in sight and is leaning in the doorway. He then turns around . . . and walks to [the] register and Sadie follows. [Joseph] turns his body with his back to Sadie trying to grab [the child], Sadie is reaching around [Joseph]. Both grab [the child's]

arm, [Joseph] turns his body again and Sadie lets go and [the child] runs to the back.

The officer declined to arrest Joseph, but Sadie maintained "there was another angle we could see him elbow her in the ribs."

A hearing on Sadie's petition was held September 13, 2014. Evidence was presented by both parties, including the video of the incident. Sadie testified that in a two-second span of time:

> There was a gap between [Joseph's] torso and the counter. My daughter was moving towards that gap. I reached under his arm, trying to not make it physical, reached for my daughter . . . we were touching. And then [Joseph] used his legs to move my daughter backwards, he placed his forearm into my ribs and moved my body backwards, and if it weren't for his actions, this would not have turned physical and this was him making it physical.

Joseph testified:

> [Sadie] kept calling for [the child], saying she was going to take her. I said, no, you need to leave, you know, it's my weekend, it's my time, I'm not—you know, I'm not doing this, you know, I'm not arguing with you, I'm not having this conversation, I want to get out of here, you know. She just kept pushing, pushing, saying no, you know, [the child is] coming with me.
>      . . . .
> I walked over to the counter; I had my left arm on it. [Sadie] came over, she kept trying to get [the child] to go with her, and I kept telling [the child] to stay. I kept telling [Sadie] she had to leave, this is my business, you need to leave.
> She kept saying, no, I'm taking [the child], you can't have her; you're still working, she's going with me. You know, I refused to let her take her basically.
> And then, you know, she just kept pushing, coming more at me, and then she basically tried to, you know, reach through me and grab [the child]. You know, she came into me, I turned, you know, scoot[ed the child], told [the child] to go into the office, and I walked away.

He testified he did not have any intent to make a harmful or offensive contact with Sadie that day.

After the hearing, the court entered a final domestic protective order, concluding Joseph committed a domestic abuse assault against Sadie. The court explained:

> The court listened carefully to the testimony of the parties and the evidence presented. In addition, the court carefully reviewed the video of the incident. The video clearly shows [Joseph] moving to his right as [Sadie] moves to her left in order to block [Sadie] from being able to access their minor child. [Joseph] puts his left arm on the counter between [Sadie] and the parties' minor child. [Joseph] is, at that time, facing [Sadie]. As [Sadie] reaches under the arm of [Joseph] to reach the parties' minor child, [Joseph] turns to his left positioning his shoulder and back between the [Sadie] and the parties' minor child. At that instance, [Joseph] makes contact with [Sadie], and it also appears [Joseph] uses his forearm to bar [Sadie] from moving forward and to push [Sadie] back. Accordingly, the court finds that [Joseph] committed domestic abuse assault against [Sadie] by having physical contact [with Sadie] which is offensive to [Sadie]. In addition to [Sadie's] testimony that such contact was offensive, [Joseph] admitted in his testimony that his intention was to block [Sadie] from reaching the parties' minor child. As such, such contact was meant by [Joseph] to be offensive to [Sadie].

Joseph subsequently filed a motion pursuant to Iowa Rule of Civil Procedure 1.904(2), asserting Sadie failed to prove by a preponderance of the evidence that he "had the specific intent to cause an offensive contact with [her]." He requested the court amend or enlarge its order to dismiss Sadie's petition and its final domestic abuse protective order. Sadie resisted Joseph's motion, and the court denied his motion.

Joseph now appeals.

## II. Scope and Standards of Review.

The trial court ruled on objections during the trial. Consequently, the parties disagree upon the correct standard of review we are to employ here. Ordinarily, civil-domestic-abuse proceedings are tried in equity, and our appellate

review of equitable proceedings is de novo. *See, e.g.*, *Wilker v. Wilker*, 630 N.W.2d 590, 594 (Iowa 2001); *Knight v. Knight*, 525 N.W.2d 841, 843 (Iowa 1994). We generally "consider and review a case in the same manner as the district court tried the case." *Molo Oil Co. v. City of Dubuque*, 692 N.W.2d 686, 690 (Iowa 2005). When the "case was tried in the district court as a law action" and it "ruled on objections as they were made," our appellate review is for correction of errors at law. *Bacon ex rel. Bacon v. Bacon*, 567 N.W.2d 414, 417 (Iowa 1997). Though an important consideration, the district court's ruling on evidentiary objections alone does not determine whether the case was tried in law or equity. *See Passehl Estate v. Passehl*, 712 N.W.2d 408, 414 (Iowa 2006). Where "the objections were minor and did not have a significant effect on the proceedings" and the "district court ultimately used its equitable powers to order specific performance and to issue an injunction," it may be concluded the case "was fully tried in equity." *Id.*

In *Sille v. Shaffer*, 297 N.W.2d 379, 380-81 (Iowa 1980), the supreme court concluded that the case would be reviewed de novo despite the fact that the district court ruled on objections during trial. The court stated:

> Upon a de novo review it would be impossible, where we disagree with a trial court's evidentiary ruling, to consider necessary evidence which would be absent from the record.
> We have no such problem in this case. We have carefully read the transcript and find few instances in which evidence was excluded from the record. In none of these situations do we disagree with the trial court's evidentiary ruling.

*Sille*, 297 N.W.2d at 381.

We have carefully reviewed the transcript in this case and find few instances where the court excluded evidence from the record based on its

evidentiary rulings, and such exclusions in this case do not impact our review of the facts and record of this case. The trial judge clearly sought to manage the courtroom during the trial of a case for which the judge was under time constraints.[1] The court's rulings on those objections were efforts at effective trial management. They were not rulings on objections that denied this appellate court an opportunity to review the admissibility of evidence such that the objects of a de novo review were somehow thwarted.[2] Considering all the facts and circumstances in this case, we conclude that the mode of trial was more akin to an equitable proceeding and that ruling on the few objections made did not convert this case to one at law. Consequently, our review is de novo.

On de novo review, we examine both the law and the facts, and we adjudicate anew those issues properly preserved and presented for appellate review. *See Wilker*, 630 N.W.2d at 594. We give weight to the district court's findings, particularly its credibility determinations, but our obligation to adjudicate the issues anew means that we must satisfy ourselves the petitioning party has

---

[1] Trial was scheduled to start at 9:00 a.m., and three hours were allotted for the trial. A delayed start was necessitated as a result of discussions held in chambers with counsel. The trial started at 9:41 a.m. and concluded at 12:25 p.m. The trial judge made at least three references to time limitations during the trial.

[2] In one instance, the court sustained a hearsay objection to an exhibit. Sadie had already testified as to its contents. In another instance, during a witness's narration, counsel objected on relevancy grounds. The court responded, "Do you have more questions on this subject matter?" Counsel said, "No." Without ruling on the objection, the court suggested counsel, "Go ahead with your next question." The court sustained an objection to certain testimony based upon finding the question posed was leading. Examining counsel said the information was in the petition and then went on to ask a non-leading question about the same subject matter. In response to another relevancy objection, the court mentioned the time-constraints and sustained the objection. Responding to a compound-question objection, the court asked counsel to rephrase his question. Counsel did. The remaining objections were overruled.

come forth with the quantum and quality of evidence sufficient to prove the statutory grounds for issuing a protective order.  *See id.* at 594.

### *III. Discussion.*

To obtain relief under Iowa Code chapter 236, Sadie first had the burden to prove by a preponderance of the evidence that Joseph engaged in "domestic abuse."  *See* Iowa Code §§ 236.4(1) ("[T]he plaintiff must prove the allegation of domestic abuse by a preponderance of the evidence."); 236.5 (providing that relief is available "[u]pon a finding that the defendant has engaged in domestic abuse"); *Wilker*, 630 N.W.2d at 596 (stating that the burden of proof is a preponderance of the evidence); *Knight*, 525 N.W.2d at 843 (same).  To establish Joseph engaged in "domestic abuse," Sadie had to establish (1) Joseph committed an assault against her within the meaning of Iowa Code section 708.1, and (2) she and Joseph had a relationship governed by chapter 236, such as a relationship between persons who are the parents of the same minor child.  *See* Iowa Code § 236.2(2)(c).  There is no question that Sadie and Joseph's relationship was the kind of relationship covered by chapter 236, as they are the parents of the same minor child.  Consequently, the issue is whether Sadie established Joseph committed an assault against her within the meaning of Iowa Code section 708.1.

Relevant here, section 708.1(2)(b) provides that a "person commits an assault when, without justification, the person does any . . . act *which is intended* to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act."  (Emphasis added).  "Assault under Iowa Code section 708.1(2) is a specific

intent crime." *State v. Copenhaver*, 844 N.W.2d 442, 452 (Iowa 2014). Consequently, it is not enough that Sadie was in fear of immediate physical contact with Joseph which would be painful, injurious, insulting, or offensive; Sadie was required to show Joseph intended to cause her "to fear immediate painful, injurious, insulting, or offensive physical contact." *See id.*; *see also State v. Keeton*, 710 N.W.2d 531, 535 (Iowa 2006) ( noting "the focus of the assault statute is on the defendant, not the victim"); *Bacon*, 567 N.W.2d at 418 (noting the focus "is on the offender's intent, not the victim's expectations"). Specific intent is present when it is shown from the circumstances that the assailant subjectively desired the prohibited result. *See State v. Fountain*, 786 N.W.2d 260, 264 (Iowa 2010). "We may infer intent from the [actor's] actions and the circumstances of the transaction." *Copenhaver*, 844 N.W.2d at 452.

The district court concluded Joseph "admitted in his testimony that his intention was to block [Sadie] from reaching the parties' minor child. As such, such contact was meant by [Joseph] to be offensive to [Sadie]." Consequently, the fighting issue here is whether Joseph's admission that he intended to block Sadie, along with Sadie's testimony that she was offended, supports the court's conclusion that Joseph intended Sadie to fear "offensive" physical contact. We find it does not.

As one professor has artfully stated: "The word 'offensive' is a coat of many colors." Caroline B. Newcombe, *Morse v. Frederick One Year Later: New Limitations on Student Speech and the "Columbine Factor*," 42 Suffolk U. L. Rev. 427, 435 (2009). Black's Law Dictionary sets forth four definitions of "offensive":

> 1. Making attack; aggressive <offensive tactics>.  2. Of, relating to, or designed for attack <an offensive weapon>.  3. Unpleasant or disagreeable to the senses; obnoxious <an offensive odor>.  4. Causing displeasure, anger, or resentment; esp., repugnant to the prevailing sense of what is decent or moral <patently offensive language and photographs>.

Black's Law Dictionary (10th ed. 2014).  In *Nelson v. Winnebago Industries, Inc.*, the Iowa Supreme Court, citing the Restatement (Second) of Torts section 19 (1965), defined "offensive," in terms of the tort of battery, which requires harmful or offensive contact: "A bodily contact is offensive if it offends a reasonable sense of personal dignity."  The comment to the restatement explains:

> In order that a contact be offensive to a reasonable sense of personal dignity, it must be one which would offend *the ordinary person and as such one not unduly sensitive as to his personal dignity.*  It must, therefore, be a contact which is unwarranted by the social usages prevalent at the time and place at which it is inflicted.

*See* Restatement (Second) of Torts § 19, cmt. a (1965) (emphasis added).  The comment gives the following illustrations:

> 1. A flicks a glove in B's face.  This is an offensive touching of B.
> 2. A, while walking in a densely crowded street, deliberately but not discourteously pushes against B in order to pass him.  This is not an offensive touching of B.
> 3. A, who is suffering from a contagious skin disease, touches B's hands, thus putting B in reasonable apprehension of contagion.  This is an offensive touching of B.
> 4. A, a child, becomes sick while riding in B's taxicab.  B takes hold of A in order to help her.  This is not an offensive touching.

*Id.*

Here, Joseph admitted he put his left arm on the counter to prevent Sadie from walking behind the counter.  He admitted he would not let Sadie take the child.  We viewed the video in real-time, in slow-motion, and frame by frame.

The incident occurs in the blink of an eye, and the contact Sadie references is not clearly evident. Viewing his actions on the video, Joseph puts his arm up as he turns away from Sadie while she moves towards him. The video shows the physical contact between the parties was incidental or minimal and was initiated by Sadie moving towards Joseph. Despite the contact, it is Sadie that continues to move forward, evidencing her lack of fear. Though Sadie testified she was offended by the contact, having reviewed the video, we must conclude that there is not substantial evidence that Joseph committed an assault within the meaning of section 708.1 or chapter 236.

### IV. Conclusion.

For the foregoing reasons, we reverse the judgment of the district court and remand this matter for dismissal of the protective order.

**REVERSED AND REMANDED.**