# IN THE COURT OF APPEALS OF IOWA

No. 14-1845
Filed March 9, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**MARK EUGENE ROBINSON,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Michael D. Huppert,

Judge.


        A defendant appeals his conviction for robbery in the second degree.

**CONVICTION CONDITIONALLY AFFIRMED; RULING ON MOTION VACATED; REMANDED WITH DIRECTIONS.**



        Mark C. Smith, State Appellate Defender, and Theresa R. Wilson,

Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Kevin Cmelik and Martha E.

Trout, Assistant Attorneys General, for appellee.


        Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**TABOR, Judge.**

In this appeal from his conviction for second-degree robbery,[1] Mark Robinson alleges the State did not offer sufficient proof he assaulted a clerk to carry out his intent to steal cigarettes from a convenience store. He also contends the district court applied the wrong standard to his motion for a new trial. We conclude substantial evidence supports his robbery conviction, but we vacate the court's ruling on Robinson's motion for new trial and remand for a determination of whether the verdict was against the weight of the evidence.

## I.    Facts and Prior Proceedings

The jury could have found the following facts from the State's evidence presented at trial. On the evening of January 1, 2014, Mark Robinson drove away in a Ford Taurus that the owner had left idling in the Forest Mart parking lot on University Avenue in Des Moines. About half an hour later, Robinson entered the Kum & Go on Hickman Road and asked the clerk working behind the counter for two cartons of cigarettes.

The clerk—who was working alone—retrieved the cartons, scanned in the prices, and rang up the sale. She kept her hand on the cartons while Robinson tried to swipe his credit card. Robinson could not complete the transaction because he held the card upside down. The clerk suggested he turn it around, but instead of reswiping the card, Robinson lunged toward her. The clerk testified Robinson "almost jumped over the counter"—grabbing the cigarette

---

[1] Robinson also appeals from his conviction for operating a motor vehicle without the owner's consent, but neither issue raised in his appellant's brief challenges that offense. Accordingly, that conviction will stand undisturbed.

cartons out of her hand. The clerk recalled being scared and, in response to Robinson's sudden movement, she "jumped back, not knowing what he [was] going to do."

After taking the cartons from the clerk, Robinson placed one hand in his pocket—acting "like he had a weapon" to harm her—and demanded more cigarette cartons. He ordered her to "give me two more right fucking now." The clerk complied with his demand, and he ran out of the store. Investigators retrieved the surveillance video from several cameras positioned around the convenience store. The prosecution presented the video to the jury during Robinson's trial. The jury convicted Robinson of robbery in the second degree. The district court sentenced Robinson to an indeterminate ten-year prison term with a seventy-percent mandatory minimum. He challenges only his robbery conviction on appeal.

## II.    Scope of Review

We review Robinson's challenge to the sufficiency of the evidence for correction of legal errors. *See State v. Keeton*, 710 N.W.2d 531, 532 (Iowa 2006). If the robbery verdict is supported by substantial evidence, we will uphold it. *See id.* We consider evidence to be substantial if it would convince a rational jury that the accused is guilty beyond a reasonable doubt. *Id.* It is not enough for evidence to raise suspicion or speculation, and we consider all evidence in the record, both inculpating and exculpating. *Id.* But in our substantial-evidence review, we take the evidence in the light most favorable to the State, including all fair inferences reasonably deduced from the testimony and exhibits. *Id.*

We also review for legal error Robinson's claim that the district court failed to apply the proper weight-of-the-evidence standard in ruling on his motion for new trial. *See State v. Root*, 801 N.W.2d 29, 30 (Iowa Ct. App. 2011).

### III. Analysis

Robinson attacks his robbery conviction in two ways. First, he claims the district court erred in overruling his motion for judgment of acquittal. Second, he contends the district court applied an incorrect standard to his motion for a new trial. We will address each claim in turn.

### A. Sufficiency of the Evidence

Robinson argues the State fell short of proving the assault element of robbery. He contends the prosecution did not show he had the specific intent to assault the store clerk or committed an overt act necessary to complete the assault.

### 1. Error Preservation

Before launching our analysis, we must decide if defense counsel's motion for judgment of acquittal preserved error as to the issues raised on appeal. Defense counsel advanced the following argument:

> At this time the defendant would move for a judgment of acquittal . . . . With regard to the charge of robbery in the second degree, it is required as part of the elements . . . that the defendant must have committed an assault. Assault is an act with the intent to cause pain or injury, an act with the intent to result in insulting or offensive contact, or an act that is done with the intent to provoke fear of insulting or offensive or painful or injurious contact.
>
> Your Honor, I believe the State's case has failed to prove the specific intent with regard to commit an assault on behalf of Mr. Robinson. . . . There is potentially a theft here. However, the State's case fails in regard to the specific intent to commit an assault and as further broken down with the specific intent to

commit those specified acts that are set out in the statute that defines assault.

In response, the prosecutor argued, based on the clerk's testimony and the store video, "there is more than sufficient evidence in the record to demonstrate an assault on any one of those alternative options." The court overruled the motion for judgment of acquittal.

On appeal, the State allows that the motion preserved error on the intent element of assault but contends it was not specific enough to preserve error on the overt-act element. We find defense counsel's mention of "specific acts," coupled with the prosecutor's reference to the various assault alternatives, preserved error as to the court's ruling on both the intent and overt-acts elements challenged on appeal. Accordingly, we do not need to consider Robinson's alternative claim of ineffective assistance of counsel.

### 2. Assault Element of Robbery

The jury convicted Robinson of robbery in the second degree after receiving the following marshalling instruction: "1. On or about January 1, 2014, the defendant had the specific intent to commit a theft. 2. To carry out his intention or to assist him in escaping from the scene, with or without the stolen property, the defendant committed an assault on [the store clerk]." *See* Iowa Code § 711.1(1) (2013) (defining robbery). Robinson does not contest the State's proof of his specific intent to commit a theft. Instead, he focuses on the second element—the commission of an assault to carry out his intent to complete a theft of the cigarettes.

"We look to the definition of assault in section 708.1 to consider whether a robbery occurred under section 711.1(1)." *Keeton,* 710 N.W.2d at 533. Iowa Code section 708.1 defines assault in three alternatives:

> A person commits an assault when, without justification, the person does any of the following:
> (1) Any act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act.
> (2) Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act.
> (3) Intentionally points any firearm toward another, or displays in a threatening manner any dangerous weapon toward another.

The third alternative is not at issue here because Robinson did not point a firearm or display a dangerous weapon. The court instructed the jury concerning the first two alternative definitions of assault, which both "contain specific intent elements." *See State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014). The court defined specific intent for the jury as "not only being aware of doing an act and doing it voluntarily, but in addition, doing it with a specific purpose in mind."

In addition to the intent element, assault requires proof of an overt act. *See State v. Heard*, 636 N.W.2d 227, 230-31 (Iowa 2001) (defining overt act as "an open, manifest act from which criminality may be implied" or as "an outward act done in pursuance and manifestation of an intent or design"); *see also State v. Copenhaver*, 844 N.W.2d 442, 451 (Iowa 2014). We consider the existence of an overt act in light of all the circumstances surrounding it. *See Copenhaver*, 844 N.W.2d at 451; *Heard*, 636 N.W.2d at 232. The first two alternatives under section 708 require different overt acts. Subsection (1) reflects the common law

crime of battery, an act intended to result in painful physical contact. *See State v. Yanda*, 146 N.W.2d 255, 255 (Iowa 1966). Subsection (2) reflects the common law crime of assault, a more preliminary act intended place another in fear of immediate physical contact. *See id.* at 256 (describing an assault as "the initial stage of an act which is aggravated by a battery").

The State points to the following overt acts indicative of Robinson's intent to assault the clerk: "He lunged over the counter, ripped the cigarette cartons from [the clerk's] hand, kept his hand in his pocket making her believe he had a weapon, and cursed at her demanding more cigarettes."

Robinson argues the State's evidence is inadequate to prove an assault. He first points out that, unlike the perpetrators in *Heard* and *Copenhaver*, he did not disguise his identity at the Kum & Go. *See Copenhaver*, 844 N.W.2d at 451; *Heard*, 636 N.W.2d at 230-31. He also draws a line between grabbing the cigarette cartons from the clerk's hands and touching the clerk. Robinson contends the surveillance video shows he may have been placing the credit card into his pocket and not gesturing as if he had a gun. Finally, he plays down his profane demand for more cigarettes as a "mere threat"—insufficient standing alone to constitute an assault.

We conclude when Robinson's actions are viewed in context, rather than parsed out separately, they constitute sufficient overt acts to prove the commission of an assault. We also find his specific intent to commit an assault may be inferred from the "circumstances of the transaction and the actions of the defendant." *See Keeton*, 710 N.W.2d at 534.

Initially, while wearing a mask may contribute to a finding of assault, it is not a necessary prerequisite.[2]  Surveillance video and the clerk's testimony support a factual finding that Robinson suddenly lunged across the counter toward the lone employee on duty, grabbing the cartons from her grasp, followed by her immediate move backward to avoid contact.  Contrary to Robinson's implication, the fact he did not actually touch the clerk does not foreclose a finding of assault.  *See id.* at 535 (accepting description of assault as "a direct, ineffectual act toward the commission of a battery").

Robinson then placed his hand in his pocket—leading the clerk to believe he might be armed—and commanded her to turn over more merchandise "right fucking now."  His actions are comparable to those found to constitute an assault in other robbery cases.  *See, e.g., Copenhaver*, 844 N.W.2d at 451-52 (walking quickly toward teller and speaking in a demanding tone of voice using swear words); *Keeton*, 710 N.W.2d at 534 (walking toward clerk with outstretched hand, but pulling hand back to chest before making contact); *Heard*, 636 N.W.2d at 232 (demanding money from lone store clerk while in close proximity to her, even without making physical contact).

The clerk testified she was "scared" by Robinson's aggressive actions and "felt threatened" believing if she did not "give him what he wants he's going to hurt [her]."  While we recognize her perceptions are not "dispositive," we may properly consider them in determining Robinson's intent.  *See Keeton*, 710 N.W.2d at 535.  We understand Robinson offers an innocent explanation for

---

[2] We note Robinson wore a knit cap, and while consistent with the winter weather, it did limit the ability to identify him by length, color, or style of hair.

placing his hand in his pocket, but the State's case did not hinge on that piece of evidence. *See id.* (deciding multiple actions and inferences supported finding of intent element of assault). Viewing the evidence in the light most favorable to the State, we conclude Robinson carried out overt acts and harbored the requisite intent to commit assault as an underlying element of his robbery offense. The court properly decided the evidence merited submission to the jury.

### B. Motion for New Trial

In ruling on Robinson's motion for a new trial under Iowa Rule of Criminal Procedure 2.24(2)(b)(6), the district court was required to decide if the verdict was against the weight of the evidence. *See State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998) (remanding for reconsideration of the motion using a weight-of-the-evidence, rather than a sufficiency, standard). Instead, the district court ruled:

> As to the evidentiary support upon which these motions are based, the Court takes the evidence at trial in the light most favorable to the State as the nonmoving party. The Court finds that there was sufficient evidence to allow this jury to conclude that all of the elements of the offenses, but specifically the robbery offense, were proven beyond a reasonable doubt.

Robinson asks for a remand with directions to apply the *Ellis* standard. The State concedes a remand is necessary. We agree the case must be returned to the district court for application of the weight-of-the-evidence standard. *See Root*, 801 N.W.2d at 31 (noting appellate courts "have repeatedly remanded to make certain the proper standard was applied").

**CONVICTION CONDITIONALLY AFFIRMED; RULING ON MOTION VACATED; REMANDED WITH DIRECTIONS.**