# IN THE COURT OF APPEALS OF IOWA

No. 17-1120
Filed July 5, 2018

**MELISSA KAY RUNYAN,**
        Petitioner-Appellee,

**vs.**

**WILLIAM MICHAEL RUNYAN,**
        Respondent-Appellant.
_____

Appeal from the Iowa District Court for Linn County, Denver D. Dillard,

Judge.

William Runyan appeals the entry of a domestic abuse protective order.

**ORDER VACATED.**

David D. Burbidge of Johnston, Stannard, Klesner, Burbidge and Fitzgerald

P.L.C., Iowa City, for appellant.

Thomas J. Viner of Viner Law Firm P.C., Cedar Rapids, for appellee.

Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**MULLINS, Judge.**

William Runyan appeals the entry of a domestic abuse protective order pursuant to Iowa Code section 236.5(1)(b) (2017).  He contends the district court erred in finding he committed a domestic abuse assault against his wife, Melissa Runyan, and issuing the protective order because the evidence was insufficient to prove an assault occurred.  William also requests an award of appellate attorney fees.

## I.      Background Facts and Proceedings

Melissa and William were married in November of 2012.  Their marriage produced one child, born in 2015.  The couple lived together with their child and Melissa's two children from a prior relationship.  William also has five children from a prior relationship who live with their mother.  William visits his other children weekly.  Melissa and William separated in April 2017, upon which William moved out of the martial home.  Melissa subsequently filed a petition for dissolution of marriage on June 1.  William and Melissa arranged a visitation schedule allowing William to visit their child at the same times he had visitation with his other children.  The schedule continued until some point prior to Melissa filing the petition in this case.[1]

On June 20, Melissa filed a petition for relief from domestic abuse, alleging William threatened her via Facebook messenger, email, text message, and in

---

[1] The parties disagree as to the exact time and reason for the cessation of visitation. William claims the visitation stopped two weeks prior because he refused to pay bills Melissa asked him to, while Melissa claims it was only a few days prior to her filing and was due to William calling her work and accusing her of stealing medications and supplies.

person.[2]  A temporary protective order pursuant to Iowa Code section 236.4(2) was entered by the court the same day.  At the hearing on the petition to determine if the temporary protective order should be converted to a permanent order, Melissa and William each testified.  Their testimony about the messages William sent to Melissa and the statements he made to her was similar as to the basic content of the messages but differed as to the meaning and context of the messages and the means of communication.[3]  Melissa claimed William came to her house on May 31, yelling at her because she had not responded to his attempts at contact.  Before William left after being kicked out of the house by Melissa, she claims he told her "I'm going to bury you" and she "needed to bury [her]self a hole, crawl in and die."

After hearing the testimony, the district court concluded William had committed domestic abuse, entered an order of protection, awarded temporary custody of their shared child to Melissa, and granted visitation to William.  William appeals.

## II.    Standard of Review

Both parties contend we should review this case de novo as civil domestic abuse proceedings are tried in equity and our appellate review of equitable

---

[2] "I will ruin you."  Melissa "need[s] to curl up in a hole and admit how worthless she is." "If you choose to take the law into your hands and break it you will pay the price in the consequences."  "I am about to ruin everything you have ever known."  "Your world is about to come crashing down." "[G]oing to lose my job and kids."  "You are a sorry piece of crap and you need to curl up in a hole and die."

[3] Melissa testified to other messages she received: "I have a stomach and I'm about to get mine" and "[y]ours is about to catch up to you."  She also testified William threatened "to call the police, he's going to call my job, he's going to call the nursing board about these narcotics that I'm stealing; he calls me a drug addict, an alcoholic, a horrible mother, I'm going to lose my job, my kids; just multiple threats; and he's just going to destroy my life and my world is going to come crashing down."

proceedings is de novo. *See, e.g.*, *Wilker v. Wilker*, 630 N.W.2d 590, 594 (Iowa 2001); *Knight v. Knight*, 525 N.W.2d 841, 843 (Iowa 1994). However, the standard of review of the district court's order depends on the mode of trial in district court. *Reed v. Reed*, No.13-0170, 2014 WL 69809, at *1 (Iowa Ct. App. Jan. 9, 2014) ("Our standard of review of the district court's order depends on the mode of trial in district court. We review civil domestic abuse proceeding[s] tried in equity de novo . . . . Where, as here, the district court rules on objections as they are made, the case is tried as a law action, and our review is at law."); *Hittle v. Hester*, No. 08-1397, 2009 WL 1676904, at *1 (Iowa Ct. App. June 17, 2009) ("Charles contends our standard of review is de novo because the case was tried in equity. In reviewing the record, we note the court ruled on at least one objection, and therefore the action was tried at law and our review is for errors at law.").

Here, the trial court ruled on objections during the trial and excluded evidence from the record based on its evidentiary rulings. Additionally, the court identified it did not try this case in equity. Therefore, the action was tried at law and our review is for errors at law. *See Bacon ex rel. Bacon v. Bacon*, 567 N.W.2d 414, 417 (Iowa 1997) (noting the court ruled on objections as they were made and, therefore, the case was tried at law). Thus, the court's findings of fact are binding upon us if those facts are supported by substantial evidence. *Id.* "Evidence is substantial if reasonable minds could accept it as adequate to reach the same findings." *Id.*

**III.  Analysis**

On appeal, William claims the evidence was insufficient to support a finding of domestic abuse and to issue the permanent protective order. He does not deny

that he messaged and made statements to Melissa, however he contends his communications were not threats and were instead informing her that he would introduce damning evidence about her and her actions in court during any future child custody battle if she continued to act as she did.

In a chapter 236 domestic abuse proceeding, relief is available only "upon a finding that the defendant has engaged in domestic abuse." Iowa Code § 236.5(1). A plaintiff must prove the allegation of domestic abuse by a preponderance of the evidence in order to obtain a protective order. *Id.* § 236.4(1). Domestic abuse means "committing an assault as defined in Iowa Code section 708.1" under certain circumstances. *Id.* § 236.2(2).

Assault can be committed in several ways. *Bacon*, 567 N.W.2d at 418. The alternatives most pertinent to the facts here provide:

> 2. A person commits an assault when, without justification, the person does any of the following:
> a. Any act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act.
> b. Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act.

Iowa Code § 708.1(2)(a)–(b). The offender must have the apparent ability to execute the assault and the ability to execute that act must be apparent to the offender, not the victim. *See Bacon*, 567 N.W.2d at 418. "Apparent ability under the assault statute means only that the ability to complete the act be apparent to the actor"—this requires that the actor's expectations of placing another in fear are reasonable. *State v. Braggs*, 784 N.W.2d 31, 37 (Iowa 2010).

Assault requires "an overt act" intended "to make the [victim] fear immediate painful, injurious, insulting or offensive physical contact." *State v. Keeton*, 710 N.W.2d 531, 534–35 (Iowa 2006). Immediate, in this case, means "occurring without delay; instant." *Immediate*, Black's Law Dictionary (10th ed. 2014). The focus of the assault statute is on the defendant, not the victim." *See Keeton*, 710 N.W.2d at 535. The fact that the victim may or may not have been afraid is not dispositive. *Id.* Intent may be inferred from the circumstances surrounding the alleged assault. *State v. Taylor*, 689 N.W.2d 116, 132 (Iowa 2004). "[A] defendant's history of threatening or violent conduct involving the same victim can be especially probative" and can "establish the justifiable inference that a defendant's charged conduct was in fact intended to engender fear on the part of the victim and that defendant knew that it was likely to do so." *Id.* at 128.

Threats of violence or other offensive physical contact could constitute an assault under section 708.1, however "[a] mere threat, without more, is not necessarily an assault by placing another in fear." *State v. Law*, 306 N.W.2d 756, 759 (Iowa 1981), *overruled on other grounds by State v. Wales*, 325 N.W.2d 87, 89 (Iowa 1982). "[O]ur courts have held threats made over the telephone or by text message did not constitute an assault when the threat lacks immediacy and an ability to execute the act." *In re Landhuis*, No. 14-1447, 2015 WL 1331854, at *3, (Iowa Ct. App. Mar. 25, 2015).[4]

---

[4] *Landhuis* cited a number of other cases finding the same. *See also State v. Button*, 622 N.W.2d 480, 484 (Iowa 2001) ("Clearly, regarding a threat over the telephone, there is no immediate ability to carry out the threat when the speaker is not even physically present."); *Kiersch v. Kiersch*, No. 12-0289, 2012 WL 4101011, at *1 (Iowa Ct. App. Sept.19, 2012) (reversing and remanding for dismissal of protective order where threatening messages were sent by text without other evidence of immediacy and apparent ability to execute the threat); *Speicher v. Rajtora*, No. 08-0769, 2009 WL 607497, at *1 (Iowa Ct. App. Mar. 11,

In order for the court to conclude William committed domestic abuse assault and enter an order of protection, the court was required to make a finding that William committed an assault. Without such a finding, relief under Chapter 236 is not available.

With regard to the email and text messages, Melissa testified she did not know William's location at the time she received those messages. In addition, she did not testify to her own location when receiving them. With no record evidence of the location of either party, Melissa did not show William's apparent ability to carry out those threats with any immediacy.

Additionally, while there is a dispute about whether William made the "bury you" threat in person or via electronic means, if we assume Melissa's version of the in-person encounter where the "bury you" threat was made and she felt scared and threatened, she still had the burden to show by a preponderance of the evidence that William intended to place her in fear of *immediate* physical contact which would be painful, injurious, insulting, or offensive since the focus of the assault statute is on defendant, not the victim. Melissa testified as to all of William's messages and statements, "I'm not sure what his intentions are." She did not testify to William's location in relation to her or his actions at the time of this statement other than "before he left, he said I'm going to bury you . . . after he told me I needed to bury myself a hole, crawl in and die." Melissa also did not testify

---

2009) (holding threatening telephonic communication where the parties were one to two miles apart was insufficient to establish immediacy and apparent ability to execute the act); *Pierson v. Mullenix*, No. 06-0555, 2006 WL 2873409, at *1 (Iowa Ct. App. Oct. 11, 2006) (finding that phone calls were mere threats and not necessarily a threat to place another in fear).

as to any history of domestic violence between her and William from which intent could be inferred. Therefore, she has not made a showing that William intended to place her in fear of immediate physical contact.

Without a showing of both William's apparent ability to carry out threats with any immediacy or William's intent to place Melissa in fear of immediate physical contact, there is not substantial evidence in the record of an assault within the meaning of section 708.1. The court, in fact, did not make a finding that William committed an assault on Melissa, pointedly expressing the following in its ruling from the bench:

> And I don't find that there was an assault here. But in the context of all of the communications, I find that there is a credible threat of an assault that—that unlike current political discourse, words matter, and actions matter. And Mr. Runyan, you've said too many words that were too concerning and threatening. . . . But I'm not going to conclude that this is just one of those things that was just heat of moment words and then have the [two of] you leave here and then have one of you kill the other. I'm not going to be responsible for that because I do find that based upon the context of these statements and the words that were used, and the heated situation that the two of you are in, there is a minimal but nevertheless adequate basis for finding that by the standard of proof that's required for these kinds of cases and not criminal cases that there should be a protective order.

Although the district found the threat credible, it made no findings of immediacy or ability to execute on the threat of an assault to support the issuance of the protective order, and because there is not substantial evidence of an assault, we reverse the decision of the district court and vacate the protective order entered July 5, 2017. All subsequent modifications of the same are hereby vacated and without further force or effect.

We agree with the court when it noted both parties have "behaved irrationally, immaturely, [and] done things that provoked the other." It is apparent

that the parties acted inconsistently with their obligations under the law and as parents to work together in order to raise their child. Threats of any sort, whether they rise to the level of an assault or not are destructive and harmful, and both parties need to set aside their differences and act in the best interests of their child. *See Landhuis,* 2015 WL 1331854, at *4.

Finally, William requests an award of attorney fees under section 236.5(4). The statute does not authorize a fee award to William. *See* Iowa Code § 236.5(4) ("The court may order that the *defendant* pay the *plaintiff's* attorney fees and court costs." (emphasis added)); *Holz v. Holz,* No. 15–0149, 2015 WL 8366167, at *1 (Iowa Ct. App. Dec. 9, 2015) ("Iowa Code chapter 236 does not authorize payment of fees by the plaintiff in a domestic abuse action."). We deny William's request.

Costs on appeal are taxed to Melissa.

**ORDER VACATED.**