# IN THE COURT OF APPEALS OF IOWA

No. 21-0794
Filed April 27, 2022

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**ARIES McGEE,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Webster County, Kurt J. Stoebe, Judge.

Aries McGee appeals his conviction for robbery in the first degree. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Rachel C. Regenold, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.

Considered by Greer, P.J., Chicchelly, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**VOGEL, Senior Judge.**

A jury found Aries McGee guilty of robbery in the first degree. The district court denied McGee's motion for directed verdict, finding sufficient evidence to support the jury's verdict. McGee appeals his conviction, asserting there is insufficient evidence to support a finding he was the person who committed the robbery. On our review, we agree with the district court and therefore affirm his conviction.

We review claims of insufficient evidence for correction of legal errors. *State v. Schiebout*, 944 N.W.2d 666, 670 (Iowa 2020). "We will uphold the verdict on a sufficiency-of-evidence claim if substantial evidence supports it." *Id.* We consider all the evidence in the record and all reasonable inferences drawn from it. *Id.* "Evidence is substantial 'if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt.'" *Id.* (quoting *State v. Trane*, 934 N.W.2d 447, 455 (Iowa 2019)).

**I. Background Facts**

Shortly before midnight on October 28, 2020, a convenience store in Fort Dodge was robbed. The robber was a tall, slender, black male dressed all in black with a hood pulled over his head, wearing a face mask with an Iowa Central Community College (ICCC) logo on it, and carrying a gun. The robber demanded the cashier open the safe and give him the money. The robber then had the cashier open the cash register drawer but removed the money from the drawer himself, only taking tens and twenties while leaving the smaller bills and a "trip" bill that would trigger a silent alarm to the police. As he started to leave, the robber

turned back, reached into the office, and turned off the front-of-store lights. The robber then exited the store. The robbery took less than two minutes.

A potential customer stopped at the convenience store around 11:50 on the night of October 28. As the customer pulled into the parking lot, he saw the lights in the store turn off and someone exit the front door. He testified the person leaving was an "African American male roughly six feet tall wearing black shirt, black pants, black shoes, and a black face mask and a black ball cap" with "short dreads protruding from the ball cap." The parking lot was only lit by the gas pumps. The customer further testified he saw an orange, American-made SUV parked facing toward the gas pumps. The customer left, assuming the store was closed.

The store manager testified that after watching the video of the robbery, it seemed the robber "knew a little too much about the store and where the safe was located and where the light switches were located." In particular, the manager noted the light switches were located on the wall in the office and not visible to customers in the store, at the register, or by the food area. Neither the store manager nor the cashier were able to positively identify the robber as McGee—who worked at the store for a few weeks in late September and early October before his employment was terminated.

The responding officer testified, "Based on the way [the robber] moved around the store, the things he asked, it appeared . . . that he had knowledge of kind of the way the store works." The officer specifically cited the robber's knowledge of the cashier's safe access, avoidance of the silent alarm trigger in the register, and turning off only the main store lights from the light switch bank in the

manager's office. The officer asked the manager about possible previous or current employees matching the description of the person on the video.

The morning of October 29, Officer Dan Charlson learned a brief description of a suspect in the robbery: a light-skinned, tall, black male in an orange Ford Edge with Wisconsin license plates. Around noon, Officer Charlson saw and conducted a stop of a vehicle matching that description; McGee—who is a tall, lanky, black male with "short dreads"—was driving the vehicle.

Sergeant Zachary Stanley interviewed McGee at the police station. McGee stated he lived in Wisconsin and was only in town to celebrate his birthday with friends. During the interview, McGee stated that on the night of the robbery, he rode with a friend to Des Moines around 6:00 p.m., spent about one hour with his girlfriend in Des Moines, and returned to Fort Dodge around 7:00 a.m. the next day. McGee stated he left his keys to the orange SUV he was driving with a friend that night. However, McGee could not name the person who drove him to Des Moines and back to Fort Dodge, describe their vehicle, or specify any place in Des Moines where he spent the night. McGee also stated he did not own, possess, or have access to any firearms.

The Fort Dodge police executed a search warrant on the residence where McGee was staying in town. In one of the bedrooms, police found a backpack that contained a facemask with the ICCC logo on it and a pistol. The pistol in the bedroom matched the pistol seen in the surveillance video from the robbery. In the bedroom's closet, police found paperwork, including bank statements in McGee's name and a firearm receipt for the pistol in the backpack listing McGee as the purchaser. The police also found shoes matching those worn by the robber.

In McGee's vehicle, police found another face mask with the ICCC logo and a receipt from a Fort Dodge retailer issued at 6:35 p.m. on October 28. The receipt was for candy found in the same closet as McGee's papers and charged to a debit card with the same last four digits as McGee's debit card.

McGee's girlfriend at the time of the robbery testified she spoke with McGee on the phone on October 28 but she did not see him in Des Moines on or around that date.

DNA swabs were taken from the light switches in the manager's office and from the firearm found in the residence. Insufficient DNA evidence was found on the light switches for analysis. The DNA evidence from the firearm indicated multiple people and was too complex for comparison with one individual. Nor were identifiable fingerprints found on the weapon.

**II. Sufficiency of the Evidence.**

On appeal, McGee asserts the State failed to prove he was the robber, noting the cashier was unable to identify McGee as the robber, the robber appeared to be shorter than McGee, the witness observations did not match the surveillance video, and no physical evidence from the scene linked McGee to the robbery.

"Direct and circumstantial evidence are equally probative" in convincing the jury of the defendant's guilt. *State v. Jones*, 967 N.W.2d 336, 342 (Iowa 2021). It is for the jury to credit or reject evidence, determining which evidence it believes and weighing it. *Id.* at 343. "[I]t is not for us to interfere with the finding made when supported by substantial evidence, even though the evidence may have also

supported a finding favorable to the defendant." *Id.* (alteration in original) (quoting *State v. Keeton*, 710 N.W.2d 531, 535 (Iowa 2006)).

McGee denied ownership or possession of a firearm and stated he did not live in Fort Dodge anymore, but officers searched a local residence where he was staying and found a pistol in his name that matched the one used in the robbery and bank statements belonging to him. Although he claimed to have been in Des Moines the night of the robbery, he could not provide a specific location he visited, name the person who drove him, or describe the vehicle in which he rode. A retail receipt contradicts his stated timeline, and his girlfriend in Des Moines testified she did not see him around the time of the robbery. He also claimed to have left his vehicle with a friend, but he could not name this friend or explain why he left his keys with this friend. McGee was also familiar with the convenience store from his time as an employee, allowing him to know the cashier could access a drop safe, the presence of an alarm trigger in the till, and how to turn off the lights.

Taken in the light most favorable to the State, we find this evidence and the reasonable inferences taken from it sufficient for a rational jury to find McGee committed robbery in the first degree. Therefore, we affirm McGee's conviction.

**AFFIRMED.**