STATE of Iowa, Plaintiff-Appellee,

v.

Charles Henry SPEARS,
Defendant-Appellant.

No. 64968.

Court of Appeals of Iowa.

Aug. 25, 1981.

Peter W. Berger, Des Moines, for defendant-appellant.

Thomas J. Miller, Atty. Gen., and Merle Wilna Fleming, Asst. Atty. Gen., for plaintiff-appellee.

Heard by OXBERGER, C. J., and DONIELSON, SNELL, CARTER and JOHNSON, JJ.

CARTER, Judge.

Defendant Charles Henry Spears appeals his conviction by jury verdict of robbery in the second degree in violation of sections 711.1 and 711.3, The Code. He asserts on appeal that he should have been granted a directed verdict, because there was insufficient evidence to sustain a necessary element of the offense. He also assigns as error the trial court's allowance of evidence of a prior felony conviction for impeachment purposes when that conviction was not yet complete, having been reduced to verdict but not to judgment and sentence. We affirm.

The evidence at trial showed that defendant entered Mickey's Lounge, Des Moines, Iowa, on November 14, 1979, around 9:00 in the morning to attempt to sell a jacket to Christ Marines, the bartender there. He returned around 2:00 in the afternoon to attempt to borrow money from Marines, who was an acquaintance of defendant. While defendant was in the lounge for this purpose, the electricity in the bar went off. Defendant immediately tried to open the

bar's cash register but failed since the lack of electricity caused the register to remain locked. Marines pushed the defendant and told him to leave. Defendant then reached into the pocket of the apron being worn by the bartender, grabbed money out of his pocket (later ascertained to be one hundred twenty-five dollars), and fled.

I. Section 711.1, The Code, defines robbery as follows:

A person commits robbery when, having the intent to commit a theft, the person does any of the following acts to assist or further the commission of the intended theft or the person's escape from the scene thereof with or without the stolen property:
1. Commits an assault upon another.
2. Threatens another with or purposely puts another in fear of immediate serious injury.
3. Threatens to commit immediately any forcible felony.
It is immaterial to the question of guilt or innocence of robbery that property was or was not actually stolen.

The key contention by the defendant in his motion for directed verdict and now on appeal addresses the element of robbery which requires "an assault on another." Of the three alternative methods which the statute provides for the commission of the offense, this was the only issue submitted to the jury by the trial court. The State does not contend that this was error. Defendant alleges that the testimony of Marines establishes that no assault actually occurred, pointing to the following testimony given by Marines at trial:

Q: Now, you say that you pushed the defendant?
A: I pushed him with my both hands.
Q: Did he push you back?
A: He didn't push me back. I was the one that did the pushing and tried to make him get out of the bar.

\* \* \* \* \* \*

Q: What did he do after you pushed him?
A: He just put his hand in my pocket—this pocket—took my money.

\* \* \* \* \* \*

Q: Now, did you know that he was putting his hand into your pocket?
A: I felt it.
Q: Can you describe how you felt it?
A: Well, if anybody puts his hand in your pocket, you feel it too.

\* \* \* \* \* \*

Q: Were you afraid of Mr. Spears?
A: No, I was not, because I know him and I didn't see no gun so there was nothing afraid to be about it.

and, on cross-examination:

Q: You weren't put in fear of your life?
A: No, I didn't—if it was somebody else that I didn't know, I probably would.
Q: And you didn't even think that he was going to injure you, did you? Hurt you?
A: No.
Q: In fact, Charley never hit you?
A: No.

According to the defendant this testimony shows that his motion for directed verdict should have been granted because the bartender was hurt neither physically in fact nor emotionally by fear. Intriguing as this argument may be, it is belied both by the legislative definition of assault and commentators discussing the meaning of that definition.

Section 708.1, The Code, defines assault in pertinent part as follows:

A person commits an assault when, without justification, the person does any of the following:
1. *Any act* which is intended to cause pain or injury to, or *which is intended to result in physical contact which will be insulting or offensive to another*, coupled with the apparent ability to execute the act. (emphasis added).

 The record, as already quoted, makes clear that Marines felt the defendant touch him when he reached into his pocket to take the money. That this touching and taking was not desired by the bartender and was therefore offensive to him is revealed by further testimony:

Q: Did you want him to touch you on your pocket?

A: I surely did not.

Q: Did he have your permission or consent?

A: He did not.

■ Furthermore, the fact that Marines may or may not have been afraid of the defendant is not dispositive. The focus of the Iowa statute is upon the defendant, not the bartender victim. As Professor Yeager says in explaining section 708.1, The Code:

> The act is described with reference to the intended results, rather than by describing the nature of the act itself. The definition is not necessarily limited to those acts which will directly lead to the stated results, but may include acts which would indirectly cause the described pain, injury *or physical contact,* if that were the intended consequence. It is not required that the battery actually result, but only that it be intended. The actor must have the apparent ability to execute the act, but it is not stated to whom this must be apparent. *Since this subsection focuses on the actor's intent, and not on the victim's apprehension, the probable meaning is that it must be so apparent to him.* (emphasis added).

J. Yeager & R. Carlson, 4 Iowa Practice, *Criminal Law and Procedure,* § 173 (West 1979). It is apparent from the foregoing that there was sufficient evidence for the jury to have found beyond a reasonable doubt that Charles Spears intended a theft and that he carried out this intent by taking money from the person of Christ Marines as well as by assaulting him during the commission of the theft by physically touching him in a way that was offensive to him and without justification or consent. Although we review this evidence in the light most favorable to the state, we do consider all of the evidence to determine if there is sufficient evidence to support the verdict of guilty. *State v. Robinson,* 288 N.W.2d 337, 340 (Iowa 1980). In so doing we find the verdict had ample support in the record, and the trial court was correct in overruling defendant's motion for a directed verdict.

II. The defendant also contends that trial court committed error by permitting impeachment of his testimony through evidence of a prior burglary conviction which had not yet been reduced to judgment. The record reveals that at the time of defendant's trial on the present robbery charge he was awaiting imposition of sentence for a burglary charge upon which he had been found guilty by a jury. At the conclusion of the State's case-in-chief, certain matters were taken up with the court by counsel out of the presence of the jury relating to the use of prior felony convictions to impeach defendant should he elect to testify. Certain out-of-state convictions were reviewed by the court and deemed to be inadmissible either because of remoteness or lack of clarity of disposition. This ruling eliminated all alleged felony convictions for use as impeachment except the burglary charge referred to.

As to the burglary charge, defendant urged that there was as yet no final judgment entered on the jury's verdict; therefore, no basis existed for recognizing it as a felony conviction. The trial court disagreed and ruled that the verdict could be recognized as a conviction for impeachment purposes should defendant elect to testify. As a result of the foregoing ruling, the following testimony was admitted during cross-examination of the defendant:

Q: Have you ever been convicted of a felony?

A: Yes, I have.

Judgment was entered on the jury verdict in the burglary prosecution prior to the entry of judgment in the present case. This was made to appear of record in the present case prior to sentencing on the robbery conviction. The record in this regard reflects that the challenged cross-examination in the robbery trial occurred on March 31, 1980. Defendant was sentenced on April 9, 1980. Entry of judgment in the burglary prosecution occurred between these two dates.

On this appeal, defendant does not rely upon any of the limitations placed on the use of prior felony convictions for impeach-

ment purposes in *State v. Martin*, 217 N.W.2d 536 (Iowa 1974). His sole attack is directed toward the fact that no judgment of conviction existed on the burglary charge at the time of the challenged cross-examination.

 We note that the federal courts have consistently maintained that use of a jury verdict on a felony charge for impeachment purposes is permissible even in the absence of judgment. *See United States v. Smith*, 623 F.2d 627, 630–31 (9th Cir. 1980); *United States v. Duncan*, 598 F.2d 839, 864–65 (4th Cir. 1979); *United States v. Klein*, 560 F.2d 1236, 1239–41 (5th Cir. 1977); *United States v. Rose*, 526 F.2d 745, 747 (8th Cir. 1975); *United States v. Turner*, 497 F.2d 406, 407 (10th Cir. 1974). But, we believe a contrary result is dictated by our statute which provides: "A witness may be interrogated as to his previous conviction for a felony. No other proof is competent, except the record thereof." § 622.17, The Code.

 Some support for defendant's contention is found in *State v. Ege*, 274 N.W.2d 350, 355–56 (Iowa 1979), where it was held that a deferred sentence could not be used for impeachment purposes. We are not disposed to conclude, however, that the holding arrived at (by a divided court) in *Ege* requires reversal in the present case. In *Ege*, there was no reason to believe that judgment would ever be entered on the particular felony charge involved because a sentencing disposition had been adopted by the trial court which was designed to avoid this result. Conversely, in the present case,

prior to the entry of final judgment, a judgment had in fact been entered on the burglary conviction used to impeach defendant.

Not all errors require reversal of a criminal conviction. *See, e. g., State v. Buford*, 308 N.W.2d 31, 34 (Iowa 1981). Where, as here, the claim of error relates to improperly admitted evidence, the purpose served by a reversal is to permit retrial of the case free from the tainted evidence. In the present case, the claimed basis for exclusion of the evidence will no longer exist upon a retrial. The purpose of reversal thus will not be achieved. This circumstance has, in other situations, been recognized as reason for not granting a new trial. *See, e. g., Hoegh v. See*, 215 Iowa 733, 740, 246 N.W. 787, 789 (1933) (improper order of proof); *Tisdale v. Ennis*, 144 Iowa 306, 310, 122 N.W. 959, 962 (1909) (use of evidence made available as a result of continuance alleged to have been improperly granted).

At best, the use of the disputed evidence in the present case was premature[1]—a fact which in no way affects the probative value of this evidence for impeachment purposes.[2] We have considered all points urged and conclude that a reversal is not required.

AFFIRMED.

1. Compare, *United States v. Duncan*, 598 F.2d 839, 864–65 (4th Cir. 1979), where the trial court at the request of the government, delayed the trial of a criminal charge until a jury verdict could be received in another felony case for purposes of impeaching the defendant's testimony. This procedure was approved on appeal.

2. *See United States v. Rose*, 526 F.2d 745, 747 (8th Cir. 1975).