# IN THE COURT OF APPEALS OF IOWA

No. 16-0797
Filed February 22, 2017

**STATE OF IOWA,**
  Plaintiff-Appellee,

**vs.**

**CHAD DEAN MEEK,**
  Defendant-Appellant.
_____

Appeal from the Iowa District Court for Shelby County, James S. Heckerman, Judge.

A defendant appeals his conviction for robbery in the first degree. **AFFIRMED.**

Jay W. Mez, Council Bluffs, for appellant.

Thomas J. Miller, Attorney General, and Thomas E. Bakke, Assistant Attorney General, for appellee.

Considered by Vogel, P.J., and Tabor and Mullins, JJ.

**TABOR, Judge.**

Chad Meek appeals his conviction for robbery in the first degree. He raises arguments concerning the sufficiency and weight of the evidence, the general-intent jury instruction, the State's introduction of photographic exhibits and statements he made to his wife from jail, and the performance of his attorney. On the last claims, alleging ineffective assistance of counsel, we decline to reach the merits and preserve them for fuller development in a postconviction-relief action. Because we find no merit in Meek's other arguments, we affirm his conviction.

## I. Facts and Prior Proceedings

A sixty-eight-year-old clerk, working alone at the Irwin Country Store, recalled receiving a phone call about 8:40 p.m. on May 25, 2015, asking how late the store was open. She told the male caller the convenience store closed at 9:00 p.m. A few minutes later, the clerk was in the back, getting ready to close, when she heard a customer come in. She asked: "Can I help you?"

The man, wearing sunglasses and holding a hand towel over his nose and mouth, replied: "Yeah, I need your money. Open your register." The clerk asked: "You got something?" In response, the man pulled out a handgun and again demanded: "Open your register." The clerk said: "That's a fake gun." (Actually, the gun was real—a Taurus 709, 9 mm pistol—and loaded with four bullets—three in the magazine and one in the chamber.)

The clerk opened the register and handed the man almost $600 in ten- and twenty-dollar bills. Seeing more cash in the drawer, the man said he wanted it all. The clerk said "no" and shut the drawer, waving him toward the door. As

he walked out, a local family walked in, hoping to buy ice-cream treats before the store closed. Instead, the customers heard the clerk yell: "He stole money from me. Call 911 right now." Video cameras in the store recorded the event.

"Someone just robbed the Irwin Country Store," one of the customers relayed to the Shelby County dispatcher at 8:59 p.m. The 911 caller reported the color of the robber's car, its license plate number, and direction of travel. The dispatcher directed officers to look for a Pontiac Grand Prix, registered to Meek, who lived west of Defiance, about ten miles from Irwin.

Responding to the 911 call, deputies from the Shelby County Sheriff's Office met at an intersection between Highway 59 and a gravel road out of Defiance. They soon saw the white Pontiac drive by and followed in a marked patrol car with lights and sirens blaring. But the Pontiac accelerated, reaching speeds of 75 miles per hour on the dusty gravel road. When the Pontiac eventually stopped, the deputies drew their weapons and ordered the driver out of the car and onto the ground. The deputies demanded to know where the gun was, but the driver denied having a gun. A dashboard camera captured the stop, which occurred at 9:20 p.m. The deputies identified the driver as Meek.

In the Pontiac, the deputies found an iPhone, a pair of sunglasses, a gun holster, and cash totaling $590 in denominations of tens and twenties, stuffed under the front passenger seat. The iPhone showed a call placed to the Irwin Country Store at 8:35 p.m. that lasted twenty-four seconds. The deputies also noticed the rear passenger window was rolled down, while the front passenger window was broken out. They surmised that during the chase Meek rolled down the wrong window before flinging out the gun. About a quarter mile to the east,

officers found broken glass in the roadway and a loaded handgun in the ditch. Records revealed Meek bought the gun from Locked and Loaded Outfitters in Harlan on March 2, 2015—about three weeks before the robbery.

The State charged Meek with robbery in the first degree, in violation of Iowa Code section 711.1 and 711.2 (2015). The case went to trial in May 2016. After the State's case-in-chief, Meek took the stand in his own defense. Meek admitted under oath that he robbed the convenience store but told the jury "he was forced to." On direct examination, Meek testified he was pulled over by a state trooper and someone else who suggested "they had a job for me" that "involved robbing a convenience store." Meek told the jury at first he thought it was a joke, but he was stopped several more times, during which the state trooper threatened Meek's wife and children. Meek insisted he committed the robbery because he was "worried about [his] family." Meek admitted he did not report the alleged threat and did not know the identity of the trooper who allegedly approached him. On cross-examination, Meek acknowledged that during a phone call from the jail, he told his wife that his mother would be "pissed" because the police took the money he planned to use to pay her overdue electrical bill and the power was slated to be turned off the following morning.

The jury found Meek guilty as charged. The district court entered judgment and sentenced Meek to an indeterminate term of twenty-five years with a mandatory minimum of seventy percent. Meek now appeals.

**II.     Scope and Standards of Review**

We review Meek's substantial-evidence claim for correction of errors at law.  *See State v. Keeton*, 710 N.W.2d 531, 532 (Iowa 2006).  If the robbery verdict is supported by substantial evidence, we will uphold it.  *See id.*  Evidence is substantial if it would convince a rational jury that the accused is guilty beyond a reasonable doubt.  *Id.*  We view the evidence in the light most favorable to the State.  *Id.*  On the question of the general-intent jury instruction, our review is also for correction of errors at law.  *See Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699 (Iowa 2016).

By contrast, we apply an abuse-of-discretion standard to Meek's claims regarding the admissibility of evidence alleged to be privileged or unfairly prejudicial and the denial of his motion for new trial alleging the verdict was against the greater weight of the evidence.  *See State v. Webster*, 865 N.W.2d 223, 231 (Iowa 2015) (unfairly prejudicial); *State v. Anderson*, 636 N.W.2d 26, 30 (Iowa 2001) (marital privilege); *State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998) (new trial).  An abuse of discretion occurs when a district court's exercise of its discretion rests on plainly untenable grounds.  *State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003).  The burden is on Meek, as the party seeking to overturn the verdict.  *See Webster*, 865 N.W.2d at 231.

We review ineffective-assistance of counsel claims de novo.  *Id.*

### III.    Analysis

### A.  Substantial Evidence

The jury received this marshalling instruction for first-degree robbery:

1. On or about the 12th day of May, 2015, the Defendant had the specific intent to commit a theft.
2. To carry out his intention or to assist him in escaping from the scene, with or without the stolen property, the defendant:
   a. Committed an assault on [the clerk]
   OR
   b. Threatened [the clerk] with, or purposely put [the clerk] in fear of immediate serious injury.
3. During the incident, the Defendant was armed with a dangerous weapon.
   If the State has proved all of the elements, the Defendant is guilty of Robbery in the First Degree.

The jury also received alternative definitions of assault:

[W]hen a person does an act which is specifically intended to:
   a) Cause pain or injury; or
   b) Result in physical contact which will be insulting or offensive; or
   c) Place another person in fear of immediate physical contact which will be painful, injurious, insulting, or offensive to another person, when coupled with apparent ability to do the act; or
   d) A person intentionally points a firearm toward another, or intentionally displays a dangerous weapon in a threatening manner toward another.

In addition, the court instructed the jury regarding Meek's compulsion

defense:

Mr. Meek claims that at the time and place in question, he was acting under compulsion.
When a person is compelled to act by another's threat of serious injury, and reasonably believes the injury is about to take place and can be avoided only by doing the act, then no crime has been committed.
The State must prove beyond a reasonable doubt that Mr. Meek was not acting under compulsion.

On appeal, Meek contends the State's evidence was insufficient in three ways: (1) proof of his identity as the robber, (2) proof of the assault or threatened element, and (3) proof that Meek was not acting under compulsion. We will discuss each claim in turn.

First, Meek did not challenge the State's proof of his identity in moving for judgment of acquittal. The motion acknowledged "he asked for money" from the clerk but disavowed any threat or assault. We will not consider an argument made for the first time on appeal. *See State v. Crone*, 545 N.W.2d 267, 270 (Iowa 1996). Moreover, the State's circumstantial evidence linking Meek to the crime was overwhelming, and Meek testified he committed the robbery but claimed compulsion. We find no failure to prove identity.

Second, Meek contends the State failed to prove "he ever assaulted, threatened or purposely put [the clerk] in fear of immediate serious injury." He asserts he did not point the gun at her or threaten to shoot. He also finds it significant that the clerk's actions during the robbery did not reflect fear and she did not seek "any therapy after the incident." We disagree.

The jury was entitled to believe the store clerk's testimony that she was afraid during the robbery. But more critically, the fact that a robbery victim "may or may not have been afraid of the defendant is not dispositive." *See State v. Spears*, 312 N.W.2d 79, 81 (Iowa Ct. App. 1981). The focus of the assault element is the defendant's intended results, not the actual impact on the victim. *See id.* Meek's actions of coming to the store just before closing, masking his face, pulling out a pistol, and demanding the lone clerk give him money from the cash register were sufficient to support his conviction for robbery under either

subsection 711.1(1)(a) or (b). *See State v. Copenhaver*, 844 N.W.2d 442, 452 (Iowa 2014); *State v. Heard*, 636 N.W.2d 227, 232 (Iowa 2001).

Third, Meek contends the State offered "no evidence he was not acting under compulsion." Once a defendant generates a fact question on the defense of compulsion, the State bears the burden of disproof beyond a reasonable doubt. *State v. Walker*, 671 N.W.2d 30, 34 (Iowa Ct. App. 2003). In *Walker*, our court adopted from *United States v. Jankowski*, 194 F.3d 878, 882–83 (8th Cir. 1999), the following four-factor test:

> 1) defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;
> 2) that defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to commit a criminal act;
> 3) that the defendant had no reasonable, legal alternative to violating the law; and
> 4) that a direct causal relationship may be reasonably anticipated between the commission of the criminal act and the avoidance of the threatened harm.

*Walker*, 671 N.W.2d at 35 (quoting *Jankowski*, 194 F.3d at 883).

We are skeptical whether Meek's testimony regaling the jury with vague accounts of a rogue, unnamed state trooper and his nefarious accomplice— perhaps Meek's ex-wife's boyfriend's brother—satisfied these four factors. Specifically, Meek did not point to an imminent threat or show he had no reasonable, legal alternative to violating the law. But assuming for the sake of argument Meek generated a fact question on compulsion, we conclude the jury was entitled to disbelieve his testimony based on the State's case-in-chief, as well as the prosecutor's cross-examination of Meek. The State presented strong evidence of Meek's planning and execution of the robbery. On cross-

examination, Meek testified the trooper who allegedly stopped and harassed him a "dozen" times "never did tell [him] a plan" for robbing the convenience store; the planning was done by Meeks. The jury was entitled to find Meek's compulsion defense incredible.

### B. Weight of the Evidence

Meek next contends the court abused its discretion in denying his motion for a new trial that alleged the verdict was contrary to the weight of evidence. *See* Iowa R. Crim. P. 2.24(2)(b)(6); *see also Reeves*, 670 N.W.2d at 201. To bolster his contention, he repeats his critique of the State's case from the sufficiency argument.

A weight-of-the-evidence analysis is broader than a sufficiency assessment and "refers to a determination that more credible evidence supports one side than the other." *State v. Nitcher*, 720 N.W.2d 547, 559 (Iowa 2006). The grant of a new trial is "reserved for those situations in which there is reason to believe that critical evidence has been ignored in the fact-finding process." *State v. Grant*, 722 N.W.2d 645, 648–49 (Iowa 2006). While the district court has wide discretion in deciding motions for a new trial, it must exercise such discretion "carefully and sparingly" as not to "lessen the role of the jury as the principal trier of the facts." *Ellis*, 578 N.W.2d at 659. A new trial should only be granted in the "exceptional case[]" where the evidence "preponderates heavily against the verdict." *Reeves*, 670 N.W.2d at 202 (citation omitted).

From our review, we find no reason to believe the jury ignored critical evidence or that its verdict tilted dramatically against the greater weight of the credible evidence. The only evidence presented by the defense was Meek's own

testimony, which defense counsel acknowledged in his opening statement "might seem unbelievable" to the jurors. We find no abuse of discretion in the denial of the motion for new trial.

### C. General-Intent Instruction

As shown in the marshalling instruction quoted above, the crime of robbery has specific-intent elements. The State was required to prove Meek "had the specific intent to commit a theft" and, under the assault alternative, that he did an act "specifically intended" to cause pain or injury, result in offensive or insulting physical contact, or place another in fear of such contact. Against this backdrop, Meek contends the district court erred by instructing the jury on both specific[1] *and* general intent.[2]

The State counters that first-degree robbery also contains general-intent elements. For instance, being armed with a dangerous weapon, according to the State, requires no showing of an additional specific purpose. Likewise, the assault alternative under Iowa Code section 708.1(2)(c) (providing a person commits assault when, without justification, the person "[i]ntentionally points any firearm toward another, or displays in a threatening manner any dangerous weapon toward another") has not been held to be a specific-intent crime. *See State v. Beck*, 854 N.W.2d 56, 66 (Iowa Ct. App. 2014) (holding 2002

---

[1] The jury received the following instruction regarding specific intent: "'Specific intent' means not only being aware of doing an act and doing it voluntarily, but in addition, doing it with a specific purpose in mind."

[2] Regarding general intent, the court instructed:

> To commit a crime a person must intend to do an act which is against the law. While it is not necessary that a person knows the act is against the law, it is necessary that the person was aware he was doing the act and he did it voluntarily, not by mistake or accident. You may, but are not required to, conclude a person intends the natural results of his acts.

amendment to assault statute expressly stating it was "general intent" crime had "continued effect" because it applied to third alternative).

Given the existence of both specific- and general-intent elements within the first-degree robbery offense, as marshaled in this case, we find the district court appropriately provided the jury with instructions defining both kinds of intent. *Cf. State v. Murray*, 796 N.W.2d 907, 910 (Iowa 2011) (finding inclusion of general-intent instruction in second-degree robbery case did not constitute reversible error). Further, reasonable jurors would not have been confused when the instructions expressly included the word "specific" where the State was required to prove Meek did the act with "a specific purpose in mind."

### D.  Admission of Photographic Exhibits

On the evidentiary front, Meek alleges he was prejudiced by the State's admission of two still photographs taken from the patrol car video and also shown to the jury. He contends admission of the photographs were "duplicative" and should have been excluded under Iowa Rule of Evidence 5.403 (allowing district court to exclude evidence, even if it is relevant, "if its probative value is substantially outweighed by the danger of unfair prejudice" or amounts to "needless presentation of cumulative evidence"). Also, Meek argues for the first time on appeal that the photographs of him "being seized and arrested by law enforcement caused a predisposition of guilt."

Because the latter objection was not raised in the district court, we will not consider it on appeal. *See State v. Sanborn*, 564 N.W.2d 813, 815 (Iowa 1997) ("A defendant may not rest an objection on one ground at trial, and rely on another for reversal on appeal."). As for the argument concerning duplication, we

find no abuse of discretion in the district court's determination of admissibility. In its case in chief, the State was required to prove Meek's identity as the robber, and the presentation of these still photographs supported testimony that the person arrested matched the description of the man with the gun at the Irwin store. Moreover, Meek cannot show he was prejudiced by the admission of the photographs when he admitted committing the robbery and relied only on a compulsion defense. *See State v. Parker*, 747 N.W.2d 196, 210 (Iowa 2008) (finding erroneous admission of evidence was harmless in light of overwhelming evidence of guilt).

### E. Marital Privilege

Meek also contends the district court violated the marital privilege provision of Iowa Code section 622.9 in allowing the prosecutor to cross-examine him regarding his telephone conversation with his wife from jail. Meek acknowledged in his testimony that a state trooper was present during the phone call. Section 622.9 does not apply "if the communication occurred in the presence and hearing of a third person." *State v. Pepples*, 250 N.W.2d 390, 394 (Iowa 1977). Accordingly, the district properly exercised its discretion in permitting this line of cross-examination.

### F. Ineffective Assistance of Counsel

In addition to his claims that were preserved in the district court, Meek raises three allegations of ineffective assistance of counsel. He argues his attorney should have (1) arranged a mental-health evaluation for him, (2) moved to suppress the evidence seized from the Pontiac, and (3) further investigated his compulsion defense. The State contends the record on appeal is inadequate to

resolve these claims and asks us to preserve them for a possible postconviction-relief action. We agree that until the record is developed, we are unable to assess the merits of these claims. *See State v. Clay*, 824 N.W.2d 488, 500–01 (Iowa 2012). Meek may raise these ineffective-assistance-of-counsel claims should he seek postconviction relief.

### G. Cumulative Error

Finally, Meek contends he did not receive a fair trial based on the cumulative effect of the errors alleged. "Having found each of the underlying claims to have no merit individually, we reject the claim of cumulative error." *State v. Artzer*, 609 N.W.2d 526, 532 (Iowa 2000). Or as our neighbors in Wisconsin have said: "Larding a final catch-all plea for reversal adds nothing; '[z]ero plus zero equals zero.'" *See State v. Marhal*, 493 N.W.2d 758, 766 (Wis. Ct. App. 1992) (citation omitted).

**AFFIRMED.**