**Andrea L. BACON, on behalf of Casey BACON, Appellee,**

v.

**Darryl F. BACON, Appellant.**

No. 96–1649.

Supreme Court of Iowa.

July 23, 1997.

Timothy M. Duffy of Duffy, Spellman, Ryan, Thomas & Clark, Des Moines, and Jeanne K. Johnson, Des Moines, for appellant.

Marcia L. Schober, Des Moines, for appellee.

Considered by McGIVERIN, C.J., and LAVORATO, NEUMAN, ANDREASEN, and TERNUS, JJ.

LAVORATO, Justice.

In this domestic abuse proceeding, we must decide whether there is sufficient evidence to support a district court's finding that a parent assaulted his teenage child. In deciding this question, we must also decide whether the parental right to inflict corporal punishment on a child prevented his actions from rising to the level of assault. We conclude there is substantial record evidence to support the court's finding of assault and the court's rejection of the parental right to inflict corporal punishment. We also award the child attorney fees. We affirm.

## I. Background Facts.

Casey Bacon is the daughter of Andrea and Darryl Bacon. Andrea and Darryl were divorced March 16, 1994. At the time of the events that are the subject of this appeal, Casey was fifteen years old and a sophomore in high school. She and her two siblings lived with Darryl.

Darryl disapproved of Casey's boyfriend, Rob Perry, who was sixteen years old at the time. Darryl was concerned that Casey was sexually active with Perry and had "grounded" Casey to stop her from seeing him. Darryl was also concerned that Casey was using her alleged participation in track as a ruse to see Perry.

Perry had called Darryl at work. In that conversation, Perry told Darryl that Darryl was being too hard on Casey. The conversation deteriorated to the point where Perry called Darryl a vulgar name. On other occasions and in public, Perry had called Darryl vulgar names, belittled Darryl, and dared Darryl to hit him. Casey was aware of these incidents.

On May 3, 1996, Casey had missed the school bus and accepted a ride home from Perry. Five other students were in the car with Perry when he offered Casey the ride. When they arrived at Casey's home, Darryl came out of the house and yelled at Casey to go into the house. Darryl ordered Perry to leave and said he would call the police. Perry responded with a vulgar name, and Darryl yelled, "Why don't you get out of the car and say it to my face!" Several of the student passengers testified that Darryl (1) was very angry, (2) chased the car as it was backing up to leave, and (3) bent the car's antenna.

Darryl followed Casey into the house. Casey realized that she had mud on her shoes and had tracked some of it on the stairway carpet. As she was cleaning the mud with a washcloth, Darryl confronted her. At this point, the stories conflict. Darryl testified that Casey raised her arms to strike him. He claims to have then grabbed her arms and held her against the wall. Darryl further testified that he believed she was going to strike him because she had struck him seven or eight times in the face with her fist two months earlier.

In contrast, Casey testified that Darryl threw her against the bathroom wall and her back hit the door frame. She further testified that Darryl held her arms and pressed his forearm across her neck, pressing her into the wall, and choking her. She testified that (1) she could not breathe, (2) the choking lasted for thirty seconds, (3) she was scared to death of her father, and (4) she had red marks on her neck for some period of time.

Following the confrontation, Casey called her mother who in turn called the police. The police arrived about an hour and forty-five minutes later. The responding officer testified that he interviewed both separately and each gave their own version of what had happened as earlier described.

The officer testified he observed no red marks on Casey's neck and no injuries to her; in addition, Casey complained of no injuries or marks. For this reason, the officer concluded no assault had taken place. The officer was not concerned about the safety of either daughter or father. Nor did either express concern about their safety. The officer thought Casey was more concerned about her father's rules then her fear of him. The following day, Darryl allowed Casey to go to her mother's home where she has been since.

About a week later, a child protective investigator with the Iowa Department of Human Services interviewed Casey and her father. The investigator testified that he made no determination as to whether an assault had taken place, only that what did happen did not rise to the level of "administrative child abuse."

## II. *Background Proceedings.*

Andrea Bacon, on behalf of her minor daughter, Casey, filed a petition for relief from domestic abuse as a result of this incident. *See* Iowa Code § 236.3 (Supp.1995) (allowing parent on behalf of unemancipated minor to seek relief from domestic abuse). Pursuant to Iowa Code chapter 232, the district court, Judge Larry Eisenhauer, issued a temporary order protecting Casey from domestic abuse. The order prohibited Darryl from contacting or communicating with Casey in any manner.

Before trial on the petition, Judge Eisenhauer awarded temporary physical custody of Casey to Andrea. In addition, Andrea filed a petition for modification of custody, support, and visitation in the dissolution action.

Later, the district court, Judge D.J. Stovall, held a hearing on the petition. Following the hearing, Judge Stovall found that Darryl had engaged in domestic abuse against Casey. The judge entered a chapter 236 permanent protective order prohibiting Darryl from any contact with Casey for one year. *See* Iowa Code § 236.5(2)(e) (providing that a protection order "shall be for a fixed period of time not to exceed one year"). The order expired June 25, 1997. The court allowed Darryl no visitation with Casey.

Darryl filed a motion for enlargement, amendment, and modification pursuant to Iowa Rule of Civil Procedure 179(b). In the motion, Darryl contended that the facts did not support a finding of abuse. Darryl also contended that parents have a right to inflict reasonable corporal punishment in rearing their children, which is not an assault. Relying on this lack-of-evidence ground and the reasonable corporal punishment defense, Darryl further contended that he did not engage in domestic abuse against Casey and asked the court to so rule.

Judge Stovall overruled the motion. The judge found Casey's testimony about how the physical contact had occurred and the extent of the physical contact more credible than Darryl's version. The judge found no basis to change this finding.

Darryl appealed. On appeal, he again contends the evidence was not sufficient to sustain a finding of domestic abuse. He also reasserts that his right as a parent to use corporal punishment to discipline Casey precludes his conduct from rising to the level of an assault for domestic abuse purposes.

Children under eighteen years of age are apparently not covered by the domestic abuse law. *See generally* Iowa Code § 236.2. Presumably, the legislature did not include this class of persons because children under eighteen are juveniles subject to the child in need of assistance provisions of the juvenile code when the child has been physically abused. *See* Iowa Code §§ 232.2(5), 232.2(6). Darryl did not raise the age issue in the district court. Nor does he do so here. The issue is therefore not before us.

### III. Scope of Review.

■ This case was tried in the district court as a law action. The court ruled on objections as they were made. Our review is therefore at law. *Knight v. Knight*, 525 N.W.2d 841, 843 (Iowa 1994) (our review is in accordance with mode of trial in district court). In a law action the district court's findings of fact are binding upon us if those facts are supported by substantial evidence. Iowa R.App. P. 14(f)(1). Evidence is substantial if reasonable minds could accept it as adequate to reach the same findings. *Tim O'Neill Chevrolet, Inc. v. Forristall*, 551 N.W.2d 611, 614 (Iowa 1996).

### IV. Sufficiency of the Evidence.

Darryl vigorously contends that the evidence was not sufficient to support a finding of domestic abuse. He points out that to establish domestic abuse Casey had to prove an assault. No assault was established, Darryl argues, because (1) he did not intend to cause injury to Casey, (2) he caused her no injury in fact, and (3) Casey was in no way fearful of being injured.

To establish domestic abuse under Iowa Code chapter 232, a plaintiff must prove an assault as defined in Iowa Code section 708.1. Iowa Code § 236.2(2). Assault can be committed in several ways. The two alternatives most pertinent to the facts here provide:

A person commits an assault when, without justification, the person does any of the following:

(1) Any act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act.

(2) Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act.

Iowa Code §§ 708.1(1), 708.1(2).

■ Assault as defined in section 708.1 is a general intent crime. *State v. Peck*, 539 N.W.2d 170, 175 (Iowa 1995); *State v. Ogan*, 497 N.W.2d 902, 903 (Iowa 1993); *State v. Brown*, 376 N.W.2d 910, 913–14 (Iowa App. 1985). Distinguishing between specific intent and general intent helps in understanding the concept of general intent. We have recognized the following distinction between the two intents:

Specific intent is present when from the circumstances the offender must have subjectively desired the prohibited result. General intent exists when from the circumstances the prohibited result may reasonably be expected to follow from the offender's voluntary act, irrespective of any subjective desire to have accomplished such result.

*State v. Redmon*, 244 N.W.2d 792, 797 (Iowa 1976) (citation omitted).

■ Thus, to commit an assault, the offender need only intend to do the act that constitutes the assault. If the prohibited result may reasonably follow from the offender's act, the offender is guilty of assault regardless of whether or not the offender subjectively desired the prohibited result. The offender need only be aware that he or she was doing the act. In addition, the offender must have done the act voluntarily, not by mistake or accident. In determining general intent, the fact finder may, but is not required, to conclude that the offender intends the natural results of his or her acts.

In addition to the intent element of assault, there is also the "apparent ability to execute the act" element. The offender must have the apparent ability to execute the act constituting the assault. Iowa Code §§ 708.1(1), 708.1(2). The ability to execute such act must be apparent to the offender, not the victim. *See State v. Jackson,* 305 N.W.2d 420, 423 (Iowa 1981); *see also* John L. Yeager & Ronald L. Carlson, 4 *Iowa Practice: Criminal Law and Procedure* §§ 173–74 (1979). The focus, therefore, is on the offender's intent, not the victim's expectations.

As mentioned, the district court found Casey's version of the incident more credible than Darryl's. As recalled, Casey testified that Darryl threw her against the bathroom wall and pressed his forearm against her neck, choking her. These actions easily qualify as an assault. From her testimony, a fact finder could reasonably infer that Darryl intended all of these actions—throwing Casey against the bathroom wall, and pressing his forearm against her neck, choking her. None of these acts were accidental; they were voluntary and therefore intentional.

A fact finder could also reasonably infer that such actions could result in (1) pain, (2) injury, or (3) physical contact that would be insulting or offensive to a person within the meaning of Iowa Code section 708.1(1). In addition, a fact finder could reasonably infer that such actions could result in placing a person in fear of immediate physical contact which would be painful, injurious, or offensive within the meaning of section 708.1(2). Finally, a fact finder could reasonably infer that Darryl was aware he had the present ability to execute the offensive acts.

In short, there was substantial record evidence to support the district court's finding of an assault constituting domestic abuse. From Casey's testimony, reasonable minds could reach the findings the district court made.

Because the focus is on the offender's intent to do the acts constituting the offense and not on the victim's expectations, Darryl's arguments that he intended no injury and Casey suffered no injury must fail. His argument that Casey was not fearful of being injured must likewise fail.

## V. Parental Right to Inflict Reasonable Corporal Punishment.

Darryl's fall-back position is that as a parent he had the right to correct his child even though his actions might otherwise constitute an assault. He concedes, however, that the parental right to inflict corporal punishment is restricted by moderation and reasonableness. Darryl points to the following evidence that his actions did not cross this line. First, he had a right to be concerned about Casey's sexual activity with Perry and about her disregarding his wishes not to see Perry. Second, he used physical force to calm Casey and to protect himself. Third, the police did not arrest him for domestic abuse. The officer testified he did not believe Casey was afraid of her father but believed she did not want to follow house rules. Last, a child protective investigator did not observe any injuries or make a finding of abuse.

We recently summarized the law about a parent's right to inflict corporal punishment on the parent's child:

> [P]arents have a right to inflict corporal punishment on their child, but that right is restricted by moderation and reasonableness. When the parent goes beyond the line of reasonable correction, his or her conduct becomes criminal. "Corrective" means it must be for the purpose of behavior modification rather than to satisfy the passions of the enraged parent. The proper test is whether, under the particular circumstances, the amount of force used or the means employed by the parent rendered such punishment abusive rather than corrective in character. No precise rule defining what is permissible can be laid down, because the amount of force which would be reasonable or excessive necessarily varies with the age, physical condition, and other characteristics of a child as well as with the gravity of the child's misconduct.

*State v. Arnold,* 543 N.W.2d 600, 603 (Iowa 1996) (citations omitted).

Were we the fact finder we might have believed Darryl's version of the incident: He

held Casey to calm her down and defend himself. If we believed him, we might as a trier of fact have found that his conduct was justified and did not constitute an assault.

█ The district court as the trier of fact, however, believed Casey's version. The same trier of fact rejected Darryl's assertion that his conduct did not constitute an assault because such actions were within a parent's right to inflict corporal punishment on the child. Implicit in its rejection of Darryl's argument is the district court's recognition that Darryl's actions as Casey described them went beyond the limits of moderation and reasonableness. Because we are bound by the district court's findings, we too must accept Casey's version. Like the district court we likewise conclude Darryl's action when viewed in this light crossed the line of moderation and reasonableness into the area of assaultive behavior. Throwing a child against the bathroom wall and choking her are not "corrective measures." Rather, we see such actions as satisfying the passions of an enraged parent.

## VI. *Attorney Fees.*

Casey requests attorney fees. Statutory authority exists for such fees. *See* Iowa Code § 236.5(3). Her request is modest, $100. The request is granted.

## VII. *Disposition.*

Because substantial record evidence supports the district court's finding of assault constituting domestic abuse, we affirm.

**AFFIRMED.**