# IN THE COURT OF APPEALS OF IOWA

No. 16-1215
Filed May 3, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**RICK PETRO,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Warren County, Kevin A. Parker, District Associate Judge.

A former husband convicted of domestic-abuse assault appeals the extension of the no-contact order protecting his former wife. **AFFIRMED.**

Karmen R. Anderson of The Law Office of Karmen Anderson, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**TABOR, Judge.**

At issue in this appeal is the district court's five-year extension of a criminal no-contact order under Iowa Code section 664A.8 (2016). Rick Petro contends the court should have found, based on his testimony, he no longer posed a threat to the safety of his former wife. Because substantial evidence in the record supports the district court's perception of a continuing threat, we affirm.

### I.      Facts and Prior Proceedings

In August 2009, Rick Petro physically assaulted his wife, Suella, in front of their children. The State charged him with domestic-abuse assault causing bodily injury, as well as first-degree harassment, based on his threat to kill Suella. Rick pleaded guilty to the assault charge, a serious misdemeanor, in violation of Iowa Code section 708.2(2). At the January 2010 sentencing hearing, the district court granted Rick a deferred judgment. The court also entered a one-year no-contact order, prohibiting Rick from interacting with Suella.

In April 2010, Rick violated the terms of his probation by leveling threats against Suella; he told a social worker that "if his wife didn't 'keep her mouth shut [he was] going to take a fucking ball bat to her head.'" Rick stipulated to the probation violation, and the court revoked his deferred judgment, placing him on probation for one year.

In January 2011, Suella applied for an extension of the no-contact order. The court granted the request on February 8, 2011, extending protection until February 8, 2016. But in April 2011, Rick again violated the no-contact order by directly addressing Suella in the courtroom during his termination-of-parental-

rights hearing, saying, "I can't believe you're doing this." He stipulated to a probation violation and received a two-day jail term for contempt of court.

On January 6, 2016, Suella filed an application for modifying a no-contact order, writing on the form she "would like the no-contact order extended for as long as possible." The district court granted the extension the same day and without a hearing. Several days later, Rick filed a motion to reconsider the extension and requested a hearing.

The court held a hearing on April 22, 2016, where Rick was the only witness. He testified against extending the no-contact order because he and Suella both still lived in Carlisle and he was "afraid that if I even pass her on the street that she'll call and turn me in." Suella offered three exhibits: (1) a March 2011 letter from an Iowa Department of Human Services (DHS) case worker concerning the traumatic impact of Rick's anger on his son, (2) a page from a DHS case plan showing Rick's psychological diagnoses, and (3) an October 2011 letter from Suella's counsel to Rick's counsel alleging Rick had violated the protective order by driving past her home and seeking to communicate with Suella through his parents. The court admitted those exhibits over Rick's objections. At the State's request, the court also took judicial notice of several juvenile court files involving the Petro children's dependency cases. Counsel for the State and Suella both argued for extension of the no-contact order, asserting Rick's past violations of the no-contact order are good predictors of his future performance.

The district court approved the five-year extension, offering the following conclusions of law:

A determination as to the safety of Suella Petro is required in this matter. Rick Petro was convicted of assault and two violations of the original No Contact Order. Petro stated that he wants "Suella out of his life" and that he was "married too long to Suella."

The Court finds that Petro is still a threat to the safety of Suella.

Rick filed a notice of appeal challenging the district court's extension of the no-contact order.

## II. Form of Review

The State asserts the extension of the no-contact order under Iowa Code section 664A.8 was not a final judgment and, therefore, cannot be appealed as a matter of right. *See* Iowa R. App. P. 6.103; *see also* Iowa Code § 814.6(1); *State v. Wiederien*, 709 N.W.2d 538, 543 (Iowa 2006) (Cady, J., dissenting) (describing no-contact orders as "collateral" to the underlying criminal proceeding and civil in nature). Assuming the State is correct on this point, we nevertheless opt to consider the underlying merits by treating Rick's notice of appeal as an application for discretionary review and granting it. *See* Iowa R. App. P. 6.108. Our court has done so in other instances. *See, e.g.*, *State v. Dowell*, No. 13-1269, 2015 WL 4158758, at *1 (Iowa Ct. App. July 9, 2015); *State v. Olney*, No. 13-1063, 2014 WL 2884869, at *3 n.2 (Iowa Ct. App. June 25, 2014). And we believe it is proper to do so here, especially considering the consequences connected with the existence and violation of a no-contact order discussed by Rick in his appellate brief.

## III. Scope and Standards of Review

We review the district court's extension of the no-contact order under Iowa Code section 664A.8 for correction of errors at law. *See* Iowa R. App. P. 6.907;

*cf. Bacon ex rel Bacon v. Bacon*, 567 N.W.2d 414, 417 (Iowa 1997). In a law action the district court's factual findings are binding upon us if those facts are supported by substantial evidence. *See Bacon*, 567 N.W.2d at 417. "Evidence is substantial if reasonable minds could accept it as adequate to reach the same findings." *Id.* Factual issues depending on witness veracity are best resolved by the district court, which has a better opportunity to evaluate credibility than we do. *See Claus v. Whyle*, 526 N.W.2d 519, 524 (Iowa 1994).

Ordinarily, we review evidentiary rulings for an abuse of discretion. *See State v. Helmers*, 753 N.W.2d 565, 567 (Iowa 2008).

## IV.    Admission of Exhibits and Judicial Notice of Court Files

On appeal, Rick complains the district court admitted three exhibits offered by Suella that were "incomplete, lacked foundation, and contained hearsay." But Rick does not cite any rules or case law to bolster his position, and he does not argue how he was prejudiced by these exhibits. In fact, he acknowledges the district court's extension order did not indicate reliance on these exhibits. We decline to address the admissibility of these exhibits. Random mention of a concern, without elaboration or supporting authority, is not sufficient to raise an issue for our review. *See Schreiber v. State*, 666 N.W.2d 127, 128 (Iowa 2003).

Rick also asserts it was error for the district court "to take judicial notice of the proceedings in a different court on wholly different matters." He cites the rule on judicial notice—Iowa Rule of Evidence 5.201—and case law stating generally courts may not take judicial notice of records in a different proceeding without an agreement of the parties. *See Troester v. Sisters of Mercy Health Corp.*, 328 N.W.2d 308, 311 (Iowa 1982). But Rick also acknowledges the extension order

does not reveal any reliance on the other court files. Because the juvenile court's files apparently did not factor into the district court's determination and because we have no access to them in this appeal, we need not decide whether the district court erred in taking judicial notice of the separate court's files.

## V.      Substantial-Evidence Analysis

"[T]he clear purpose of section 664A.8 is to grant the court express authority to extend the duration of no-contact orders when the circumstances require continuing protection." *Ostergren v. Iowa Dist. Ct.*, 863 N.W.2d 294, 299 (Iowa 2015). The statute provides:

> Upon the filing of an application by the state or by the victim . . . which is filed within ninety days prior to the expiration of a modified no-contact order, the court shall modify and extend the no-contact order for an additional period of five years, unless the court finds that the defendant no longer poses a threat to the safety of the victim, persons residing with the victim, or members of the victim's family.

Iowa Code § 664A.8.

The legislature's language in this section *requires* the district court to lengthen the period of protection upon a timely application *unless* the court finds evidence in the record showing defendant could now contact the victim without any continuing risk of harm.[1] The district court did not find evidence in this record to disprove the existence of a continued threat to Suella's safety. The court pointed to Rick's original act of domestic violence in 2009 and his two violations of the no-contact order in 2010 and 2011. The court also highlighted two

---

[1] This wording contrasts with the permissive terms for continuing protective orders under chapter 236. *See* Iowa Code § 236.5(2) ("The court may extend the order if the court, after hearing at which the defendant has the opportunity to be heard, finds that the defendant continues to pose a threat to the safety of the victim, persons residing with the victim, or members of the victim's immediate family.").

disparaging references to his relationship with Suella from Rick's testimony at the 2016 hearing, specifically that he wanted her "out of his life" and that they were married "too long."

Rick argues the district court took these references out of context, and he characterizes them as "innocuous statements that are often heard as response from one that had been married and is now divorced." While the statements may have more than one connotation, we defer to the trial court—it had the chance to hear the tone and observe the demeanor of the witness when he expressed these negative views regarding the protected party.

We also find other aspects of Rick's testimony support the district court's findings. For instance, when asked about the ball-bat-to-the-head threat he made toward Suella, he minimized the incident as follows: "During a supervised visit with my son, the DHS worker thought I said something that was inappropriate." Rick also blamed "bad advice" from his attorney for the courtroom confrontation with Suella that constituted the second violation of the no-contact order. These examples of his defensive posturing are inconsistent with any true appreciation of the hazard he has posed to his former wife.

On appeal, Rick characterizes both violations as "relatively minor" and emphasizes they took place five years ago. We are not persuaded to reverse the district court's decision based on Rick's assertions he has not engaged in any physical violence against Suella since the issuance of the original no-contact order in 2010. Section 664A.8 does not require a victim to allege or prove a new incident of domestic abuse or a violation of the existing order to satisfy the continuing-threat element. *Cf. Clark v. Pauk*, No. 14-0575, 2014 WL 6682397, at

*4 (Iowa Ct. App. Nov. 26, 2014) (upholding extension of protective order under section 236.5(2)). Rick's physical violence toward Suella in the presence of their children, his repeated violations of the no-contact order, his recent minimization of those violations, his persistently hostile attitude toward Suella, and the geographic proximity of their residences are all factors supporting the district court's conclusion Rick remained a threat to Suella's safety.

Finally, Rick asserts the existence of the no-contact order has been detrimental to his job prospects. He also contends he "lives in fear" of incidental contact with Suella in the community where they both reside. But negative impacts on the defendant are not part of the calculus when a court is deciding whether to extend the no-contact order. The only factor for consideration is whether he still poses a threat. Substantial evidence in the record supports the district court's assessment Rick does. Accordingly, we affirm the district court's five-year extension of the no-contact order.

**AFFIRMED.**