# IN THE COURT OF APPEALS OF IOWA

No. 20-0872
Filed May 26, 2021

**N.H., on behalf of R.W. and A.W.,**
**Minor Children,**
    Petitioner-Appellee,

**vs.**

**L.W.,**
    Respondent-Appellant.
_____


    Appeal from the Iowa District Court for Jasper County, Thomas P. Murphy,

Judge.


    L.W. appeals the district court's grant of a sexual abuse protective order

under Iowa Code chapter 236A (2020).  **REVERSED.**



    Laura A. Eilers of Peglow, O'Hare & See, P.L.C., Marshalltown, for

appellant.

    N.H., Newton, self-represented appellee.


    Considered by Bower, C.J., and Vaitheswaran and Greer, JJ.

**GREER, Judge.**

This matter involves the grant of a sexual abuse protective order based on an allegation that L.W. sexually abused his minor relative, R.W.  In May 2020, R.W.'s mother, N.H., petitioned for, and the district court granted, a final sexual abuse protective order providing "[L.W.] is restrained from committing further acts of sexual abuse or threats of sexual abuse.  [L.W.] is restrained from any contact with the Petitioner/Protected Party."[1]  Shortly after filing the petition, N.H. filed two child protective services child-abuse assessment summaries (CPS summaries). One CPS summary was from 2016, which confirmed a sexual abuse allegation against L.W. as founded.  The other, a 2020 CPS summary, related to an Iowa Department of Human Services (DHS) investigation of R.W.'s father for denial of critical care by failing to provide proper supervision resulting from allegations the father allowed R.W. to be around L.W.  The 2020 investigation and CPS summary concluded the allegation was not confirmed because the father had no knowledge of the 2016 confirmed finding of abuse.

Citing several theories, L.W. appeals.  He claims prejudice by the district court's consideration of the 2016 CPS summary because (1) it did not have authority to access the report and (2) the report was not made part of the record for the court's consideration.  L.W. next argues N.H. did not have authority to re-disseminate either CPS summary that she filed with the district court.  L.W. further claims the finding of sexual abuse was not supported by a preponderance of the

---

[1] R.W. and a minor sibling, A.W., were listed as protected parties in the court's final protective order.  A.W. was listed on the petition as a child "whose welfare may be affected by this controversy."

evidence, the district court erred in finding L.W. posed a "credible threat" to R.W., and the district court erred in including A.W. in the protective order. Finally, L.W. claims the district court erred in not sua sponte continuing the hearing—which was held virtually—considering the technical difficulties that occurred.

**I. Facts and earlier proceedings.**

Self-represented N.H. petitioned for relief from sexual abuse on behalf of her minor child, R.W. (born in 2012) in May 2020, pursuant to Iowa Code section 236A.3 (2020). N.H. named L.W., the child's paternal uncle, as the respondent. The district court issued a temporary protective order pending a hearing on the petition. From our review of the record, we glean that there was a 2016 allegation L.W. sexually abused R.W. Each party here represented the DHS report was founded but that L.W. received no notice of that nor was he given the opportunity to dispute the finding. No criminal charges were ever filed against L.W., and there were disputed allegations about a different perpetrator of abuse against R.W.

Turning now to March 2020, DHS began investigating a claim that R.W.'s father was allowing L.W. to be around R.W. It was confirmed L.W. had been temporarily residing in his grandparents' home with R.W. After N.H. got DHS involved, L.W. moved out of the grandparents' home, but N.H. brought this present action to keep L.W. from having any further contact with R.W.

L.W. thought the 2016 sexual abuse allegation was "dropped," although he never received any notice from DHS that the 2016 case had been closed. There were no new allegations of sexual abuse against L.W. since the 2016 investigation.

A hearing on N.H.'s petition was scheduled for late May 2020, and it was conducted by video conference through GoToMeeting[2] due to the COVID-19 public health emergency. N.H. appeared telephonically and was not represented by counsel. L.W. appeared by video with counsel. The district court asked L.W. at the outset whether he consented to the audio and video virtual format of the hearing, and he agreed. However, at multiple points throughout the hearing there were audio disruptions that made it difficult for the parties to hear each other. At no point did anyone ask the court to end the hearing or continue it due to the technological issues.

L.W. moved to dismiss the petition shortly after the hearing began. His counsel argued

> The allegations of the sexual abuse were in 2016; and it was investigated by the [DHS]. It was my client's understanding that it was being dismissed; it wasn't. It wasn't appealed but it was investigated by law enforcement. No charges were filed. Nothing happened since 2016 until this year when he moved in. [J.W.[3]] lived with his mother; and the two children [J.W.] has primary care of . . . and [L.W.] moved in for two weeks because he was involved in an accident and had a concussion issue. He's not living there any longer.
> [DHS] became involved just because of the *founded* abuse; and when that was noted—known by [J.W.], [L.W.] left the residence immediately. And so we don't think it's timely. These allegations are 2016. We don't think [L.W. is] an appropriate person for a 236 action, in that he's not a resident of the party; it's not like a—allegations of one of the parents here or another child or someone living in the home.
> And so that goes for our motion to dismiss. We don't think it's an appropriate 236 action. And then when we get to the merits of

---

[2] GoToMeeting is a videoconferencing program.
[3] J.W. is the children's father.

the case, our position is that there's no basis for a no-contact order based on the evidence that the court would hear.

(Emphasis added.)

Next, N.H. presented her evidence and testified. She started by agreeing with L.W.'s counsel that "there is a case in 2016 of a founded sexual abuse in the second degree by [L.W.]." No other details of the 2016 DHS investigation were proffered. She voiced concern once L.W. moved into the paternal grandparents' home where R.W. resided with his father. N.H. became upset upon learning L.W. spent time alone with R.W. when he took him to get a haircut. In late February 2020, she confronted L.W.'s father with her concerns. N.H. said the father did not want to believe the allegations and resisted her pleas to get L.W. out of the house because L.W. was struggling financially.[4] N.H. then contacted DHS, prompting the denial-of-critical-care investigation that was ultimately unfounded.[5] According to N.H., it was not until DHS got involved that L.W. left the grandparents' home and ceased all contact with R.W.

After the mother's evidence, L.W. moved for a directed verdict, presenting similar arguments he made in his motion to dismiss.

> I don't think that there is [a] showing by the testimony heard today that there was any sexual abuse by [L.W.] . . . .
>     . . . [T]here is no showing that [L.W.] is a family or household member; and that it's stale based on the timing of the allegations.

---

[4] N.H.'s paramour offered brief testimony corroborating her testimony that R.W.'s father did not seem concerned about the sexual abuse allegation or L.W. being around R.W.

[5] N.H. also testified that DHS advised her to file the petition for a protective order that is before us in this appeal.

The district court took the motion for directed verdict under advisement but wanted to hear from L.W. L.W. attempted to testify on his own behalf but technical issues hampered the presentation. L.W.'s counsel then offered a "professional statement" to the court in lieu of L.W.'s testimony:

> Your Honor, there has been no—this was investigated by law enforcement and there were no criminal charges filed against my client. Because of that (Audio disruption)—do not believe that there would be any restriction from him being there; and I don't think that *DHS's finding* necessarily says he can't have contact with [R.W.], but there is just a *finding by DHS*. When my client . . . when he had contacted me regarding this matter, he was instructed to get [L.W.] out of there; and [L.W.] left the house.
> We don't have any additional statements in that regard, other than I think [L.W.] would also tell the court that the initial allegations were against the boyfriend of [N.H.] . . . and then later they became against [L.W.].

(Emphasis added.) The court then concluded the hearing and issued a final sexual abuse protective order later that day, finding by a preponderance of the evidence that L.W. committed a sexual abuse against R.W. and presented a credible threat to R.W.'s and A.W.'s physical safety. In the final order, the court stated it "considered the admissible testimony of the parties . . . . It is undisputed that in 2016 a report of sexual abuse was confirmed. The [CPS] SUMMARY, while not admitted, is in the court file and is consistent with testimony and arguments." L.W. appeals from the order.

## II. Standard of Review and Error Preservation.

The question of which standard of review to apply requires we visit the trial transcript. Actions brought under Iowa Code chapter 236A are tried either in equity or as an action at law. *A.N. v. J.G.*, No. 19-0634, 2020 WL 2061881, at *2 (Iowa Ct. App. Apr. 29, 2020) (looking to cases interpreting chapter 236—which is similar

in organization, language, and scope to chapter 236A—for guidance on standard of review for chapter 236A actions). If tried in equity, our standard of review is de novo. *T.D. v. J.P.*, No. 19-0607, 2020 WL 1548516, at *2 (Iowa Ct. App. Apr. 1, 2020). If tried as an action at law, the district court's findings are binding if supported by substantial evidence. *Bacon v. Bacon*, 567 N.W.2d 414, 417 (Iowa 1997) (holding an action under chapter 236 in which the district court ruled on objections as they were made is an action at law, and the district court's rulings are binding if supported by substantial evidence). We agree with L.W. that the district court tried this action in equity, although not explicitly stating so.[6] Therefore our review is de novo. *T.D.*, 2020 WL 2061881, at *2.

L.W. moved to dismiss N.H.'s petition at the outset of the hearing and later moved for a directed verdict. He argued the allegations were stale and asserted there was insufficient evidence for N.H. to prove sexual abuse occurred. Further, L.W. claimed he was not an "appropriate person for a 236 action" and disputed N.H.'s request for a no-contact order. Therefore, we find error was preserved as to L.W.'s sufficiency-of-the-evidence claim.

As to L.W.'s claim that the district court erred in not continuing the virtual hearing sua sponte, it is not preserved for our review. The district court asked L.W. at the outset whether he consented to the audio and video virtual format of the hearing; he agreed. At no point did L.W. ask the court to suspend the hearing or

---

[6] Only one objection was made during the hearing; L.W. objected on hearsay grounds to N.H. soliciting her paramour's testimony regarding a conversation with R.W.'s father. The district court replied, "Okay. I will take it subject to the objection and give it the weight I can give it under the rules." In its final order, the district court stated, "The court considered the admissible testimony of the parties and did not consider the objected to hearsay testimony."

continue it due to the technological issues both parties experienced. "Nothing is more basic in the law of appeal and error than the axiom that a party cannot sing a song to us that was not first sung in trial court." *State v. Rutledge*, 600 N.W.2d 324, 325 (Iowa 1999). If L.W. wanted the hearing suspended or continued, he should have raised his concerns with the district court. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.")

**III. Analysis—.**

**A. Proof of Sexual Abuse and the CPS Summaries.**

To establish a need for relief from sexual abuse, N.H., as the person seeking the protective order, must prove a finding of sexual abuse by "a preponderance of the evidence." Iowa Code § 236A.6(1); *see A.N.*, 2020 WL 2061881, at *3-4 (concluding the testimony offered substantial support for the sexual abuse finding in a dispute about consent,); *T.D.*, 2020 WL 1548516, at *2 (affirming grant of sexual abuse protective order where both parties testified and agreed a sex act occurred but disputed whether it was consensual in competing testimony). "A preponderance means the greater weight of the evidence." *T.D.*, 2020 WL 1548516, at *2. We afford "respectful consideration" to the district court's fact finding and credibility determinations, but we are not bound by them. *Wilker v. Wilker*, 630 N.W.2d 590, 594 (Iowa 2001). L.W. contends N.H. did not meet her burden. He argues not only was there no testimony about any specifics of alleged sexual abuse, but there were no exhibits offered to prove the claim. N.H. filed the two CPS summaries in the court file, but the district court should not have and

could not have considered them for various reasons. Still, the district court found that "[i]t was undisputed that in 2016 a report of sexual abuse was confirmed." And the district court acknowledged, "The [CPS] SUMMARY, while not admitted, is in the court file and is consistent with testimony and arguments."

At this appellate stage, L.W. urges the district court did not have the authority to access the 2016 CPS summary filed by N.H. because it did not make a "finding" it was "necessary for the resolution" of the 236A hearing. *See* Iowa Code § 235A.15(2)(d)(2). "Access" commonly means "to get at, to gain access to."[7] But, the legislature allows the mother access to the CPS summaries. *See id.* § 235A.15(2)(a)(2) (confirming access to report and disposition data "[t]o a parent or to the attorney for the parent of a child named in a report as a victim of abuse"). Thus the district court did not "access" the report but was provided the CPS summaries by the mother in the court file. Even so, to address that contingency, L.W. further maintains that the mother had no authority to disseminate the report. *See id.* § 235A.17. He raises confidentiality concerns promulgated by the child-abuse registry. *See id.* § 235A.15(1). Yet all parties to this 236A proceeding were authorized to have the CPS summaries by statute. *See id.* § 235A.15(2)(a)(2), (4) (authorizing access to the parent of a child victim of abuse and the person named in the report as having abused the child). Likewise, the entire file in a 236A sexual abuse case "shall be sealed . . . to protect the privacy interest or safety of any person." *Id.* § 236A.11(3). So L.W.'s argument that the disclosure was prejudicial to him is unclear. L.W. did not move to strike either of the filed CPS summaries at

---

[7] *Access*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/access (last visited Apr. 28, 2021).

the time of the hearing. What is more, none of these arguments about the confidentiality of the CPS reports were raised below or by a motion to reconsider the ruling of the district court after L.W. realized the district court relied upon the filed reports. Therefore, we decline to address the arguments here. *See Meier*, 641 N.W.2d at 537.

Having said that about the CPS reports, we still must decide appellate issues from a review of the record made before the trial court. *See Kliege v. Iowa Emp. Sec. Comm'n,* 206 N.W.2d 123, 126 (Iowa 1973) ("[F]acts not properly presented to the court during the course of trial and not made a part of the record presented in this court . . . will not be considered by this court on review."). And in the trial record, L.W. raised insufficiency of the evidence. Central to L.W.'s argument is the failure of N.H. to admit the CSP summaries as exhibits in the record of the hearing or to testify about any of the 2016 allegations of sexual abuse. "[W]e do not utilize a deferential standard when persons choose to represent themselves." *Hays v. Hays*, 612 N.W.2d 817, 819 (Iowa Ct. App. 2000). The statute required N.H. to prove sexual abuse by "a preponderance of the evidence." *See* Iowa Code § 236A.6(1); *A.N.*, 2020 WL 2061881 at *3-4. And the statute confirms the proceedings are "held in accordance with the rules of civil procedure, except as otherwise set forth in [chapter 236A] and in chapter 664A." *See McConkey ex rel. B.M. v. Huisman*, No. 18-1399, 2019 WL 3317373, at *2 (Iowa Ct. App. July 24, 2019) (quoting Iowa Code § 236A.9).

L.W. argues the 2016 CPS summary cannot be used to "prop up" the limited testimony unless it was made an exhibit and offered into the record. Recognizing that self-represented parties might access this Iowa Code chapter for relief, the

language of the statute directs the department of justice to provide standard forms and references the county attorney as a possible resource to assist plaintiffs in this proceeding. *See* Iowa Code §§ 236A.4, 236A.5. N.H. utilized the standard forms but not the assistance of the county attorney during the hearing. Thus, the record on appeal is not a model of trial procedure. Still, on our de novo review, the evidence established that both parties conceded a 2016 founded sexual abuse allegation involving L.W. and R.W.

When L.W. moved to dismiss the petition at the outset of the hearing, he conceded: "[DHS] became involved just because of the *founded abuse*; and when that was noted—known by [J.W.], [L.W.] left the residence immediately." (Emphasis added.) N.H. agreed with that characterization and confirmed generally a "case of a founded sexual abuse in the second degree by L.W." In the motion for directed verdict L.W. pointed out there was no "*showing by the testimony* heard today that there was any sexual abuse by [L.W.] towards [R.W]." (Emphasis added.) That said, L.W. did not directly deny the allegations, nor did he reference or challenge the substance of the 2016 CPS summary, but he did point to the insufficiency of the evidence. At the end of the hearing, L.W.'s counsel offered a "professional statement":

> Your Honor, there has been no—this was investigated by law enforcement and there were no criminal charges filed against my client. Because of that (Audio disruption)—do not believe that there would be any restriction from him being there; and I don't think that *DHS's finding* necessarily says he can't have contact with [R.W.], but *there is just a finding by DHS*. When my client . . . contacted me regarding this matter, he was instructed to get [L.W.] out of there; and [L.W.] left the house.

(Emphasis added.)

Based on the parties' position at trial that a founded 2016 DHS report of sexual abuse existed against L.W., the district court found the report to be undisputed. Because it was part of the court file, the district court noted the 2016 CPS summary, "while not admitted, is in the court file and is consistent with testimony and arguments." But other than each party conceding there was a 2016 founded abuse report no other details were offered. And as an additional concern, until this recent DHS investigation against his brother, L.W. points out he thought the 2016 allegations were dismissed and he was unaware of the founded report so had no ability to dispute the it. *See* Iowa Code § 235A.19 (2016).[8]

In the end, the statute is clear about the standard of proof we must apply. Here the evidence available in this record fails to prove the sexual abuse allegations by a preponderance of the evidence. *See M.W. ex rel. B.W. v. J.W.*,

---

[8] Iowa Code section 235A.19 provides in part:

(2) At the time the notice of the results of a child abuse assessment performed in accordance with section 232.71B is issued, the department shall provide notice to a person named in the report as having abused a child of the right to a contested case hearing and shall provide notice to subjects other than the person named in the report as having abused a child of the right to intervene in a contested case proceeding, as provided in subsection 3.

(3)(a) A subject of a child abuse report may file with the department within ninety days of the date of the notice of the results of a child abuse assessment performed in accordance with section 232.71B, a written statement to the effect that report data and disposition data referring to the subject is in whole or in part erroneous, and may request a correction of that data or of the findings of the child abuse assessment report.

(3)(b) The department shall provide a person named in a child abuse report as having abused a child, who has been adversely affected by a founded child abuse disposition, notwithstanding the placement of the report data in the central registry pursuant to section 232.71D, with an opportunity for a contested case hearing pursuant to chapter 17A to correct the data or the findings, unless the department corrects the data or findings as requested.

No. 19-0574, 2020 WL 4200856, at *3-4 (Iowa Ct. App. July 22, 2020) (affirming the denial of a chapter 236A application for protective order after reviewing testimony and a video interview of the child because mother failed to prove by a preponderance of the evidence the father committed sexual abuse). In light of the lack of evidence of the specifics of the alleged sexual abuse in the record, N.H. failed to meet her burden under a preponderance of the evidence. Therefore, we reverse the district court order granting N.H.'s petition for a protective order against L.W.

L.W. presents two additional claims, arguing the court erred in finding he presented a credible threat to the children and erred in including another child, A.W., as a protected person in its final order. Because we reverse the district court's order, we need not consider these additional issues.

**IV. Conclusion.**

Because N.H. failed to prove L.W. sexually abused R.W. by a preponderance of the evidence, we reverse the district court's issuance of the chapter 236A protective order.

**REVERSED.**