# IN THE COURT OF APPEALS OF IOWA

No. 21-1464
Filed June 15, 2022


**J.F. ON BEHALF OF B.A.F.,**
     Plaintiff-Appellee,

**vs.**

**K.M.,**
     Defendant-Appellant.
_____


Appeal from the Iowa District Court for Hardin County, Paul G. Crawford, District Associate Judge.


K.M. appeals the imposition of a protective order for relief from sexual abuse entered under Iowa Code chapter 236A (2021).  **AFFIRMED.**


Laura A. Eilers of Peglow, O'Hare & See, P.L.C., Marshalltown, for appellant.

Colin Murphy of Gourley Rehkemper & Lindholm, PLC, West Des Moines, for appellee.


Considered by May, P.J., and Greer and Chicchelly, JJ.

**CHICCHELLY, Judge.**

A teenager appeals the imposition of a protective order for relief from sexual abuse entered under Iowa Code chapter 236A (2021). He challenges the sufficiency of the evidence supporting a finding of sexual abuse. Because substantial evidence supports the court's finding, we affirm.

**I. Background Facts and Proceedings.**

Two teenagers, K.M. and B.F., met at the end of the 2020-21 school year. Over the next few days, they exchanged increasingly flirtatious messages via social media. Some messages suggested the possibility of a "friends with benefits" relationship or a casual sexual encounter.

About four days after meeting, K.M. and B.F. went swimming with friends and shared a brief kiss while alone. As a friend of B.F.'s brother, K.M. planned to stay overnight in B.F.'s home. K.M., who was in the basement, consumed alcohol and exchanged more messages with B.F., who was in her bedroom. At one point, B.F. went to the kitchen for a drink and invited K.M. to come say goodnight to her in person. According to K.M., the two engaged in more kissing and sexual touching for around fifteen or twenty minutes before he returned to the basement.

More messages were exchanged. B.F. told K.M. to come to her bedroom. K.M. did. The encounter ended when B.F.'s mother, J.F., entered the bedroom and found the two naked, with K.M. on top of B.F. According to J.F., K.M. "froze" while B.F. curled into a fetal position and cried. K.M. admitted that he had sexual intercourse with B.F. Repeatedly, B.F. stated that she did not consent while K.M. insisted she had.

J.F. called law enforcement, but no charges were filed against K.M.

J.F. petitioned for relief from sexual abuse by K.M. on B.F.'s behalf. After a hearing, the juvenile court issued a one-year protective order, preventing K.M. from having any contact with B.F. K.M. appeals.

**II. Scope and Standard of Review.**

Because the court ruled on objections, the action was tried at law. *See Bacon ex rel. Bacon v. Bacon*, 567 N.W.2d 414, 417 (Iowa 1997). Our review is for correction of errors at law. *See* Iowa R. App. P. 6.907.

In reviewing K.M.'s challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the juvenile court's findings. *See Grinnell Mut. Reins. Co. v. Jungling*, 654 N.W.2d 530, 535 (Iowa 2002). We do not weigh the evidence or pass on witness credibility. *See id.* The court's findings are binding if supported by substantial evidence. *See id.* Substantial evidence exists if "one may reasonably infer the finding from the evidence." *Id.*

**III. Discussion.**

K.M. challenges the sufficiency of the evidence showing he committed sexual abuse against B.F. To issue a protective order, the court needed to find by a preponderance of the evidence that sexual abuse occurred. *See* Iowa Code § 236A.3(2) ("If the factual basis for the alleged sexual abuse is contested, the court shall issue a protective order based upon a finding of sexual abuse by a preponderance of the evidence."). A preponderance

> means superiority in weight, influence, or force. The evidence may preponderate, and yet leave the mind in doubt as to the very truth. In such cases the evidence does not fairly set the question at rest, but merely preponderates in favor of that side whereon the doubts have less weight.

*Walthart v. Bd. of Dirs. of Edgewood-Colesburg Cmty. Sch. Dist.*, 694 N.W.2d 740, 744 (Iowa 2005) (citation omitted).

Chapter 236A defines "sexual abuse" as "any commission of a crime defined in chapter 709 or section 726.2 or 728.12." *Id.* § 236A.2(5). A person commits sexual abuse under section 709.4(1)(a) by committing a sex act "by force or against the will of the other person." The question is whether there is substantial evidence supporting the juvenile court's finding that it is more likely sexual abuse occurred than did not.

What occurred before K.M. entered B.F.'s bedroom is largely undisputed, and there is no dispute over what happened after J.F. discovered them. The question is what took place when K.M. and B.F. were alone in the bedroom. B.F. and K.M. gave very different accounts.

B.F. testified that she did not remember what happened after she got a drink in the kitchen and returned to her bedroom. She has prescription medication to help with headaches and sleep, and she took it on that night. That medication usually induces sleep within an hour. B.F. remembers asking K.M. to come to her room, but she does not recall him entering. She testified that she remembers "waking up and I opened my mouth to speak because he put his hand over my mouth, but while it was muffled, so I don't think he really heard it, but I was saying no and stop repeatedly."

K.M. testified that he went to B.F.'s room and they resumed kissing. At one point, he unzipped the onesie B.F. was wearing and they both got up from the bed to undress. K.M. claims that B.F. never told him no or said that she did not want to have intercourse with him. He admits that he put his hand "lightly over [B.F.'s]

mouth" for part of the encounter because she was making moaning noises and he "wanted to make it obvious that she needed to stay quiet" to avoid being caught. K.M. testified that at one point, he tried to end the encounter but B.F. insisted he continue. According to K.M., B.F. did not cry or object until her mother came in to the room and caught them.

At the end of the hearing, the juvenile court conceded that what occurred in the bedroom "is in dispute and up for disagreement." But it found what occurred after that night was key to determining whether sexual abuse occurred:

> [B.F.]'s reactions that her mother talked about indicate to the court a level of trauma, not a level of embarrassment or shame. Any shame that [K.M.] could, I guess, attribute to this event is shame of getting caught. [B.F.]'s behavior after being caught is not consistent with a shame of being caught. It is consistent with not even embarrassment. It is trauma from going through an experience, and her behaviors afterwards of refusing to go into that room. On her own volition, you know, tossing several hundred dollars' worth of bedding because she just couldn't sleep in that bed after what had happened to her. Her refusing for a long time to go back into that room even after the parents had gotten a new mattress, gotten a new box spring, rearranged the room, tried to make it amenable to her, she still wasn't having it. And then the knee-jerk reaction that she had when her mother reached out to try to console her is retreat, cower, cry. All of those subsequent behaviors are consistent with what happened in the bedroom being not with her will or with her consent but rather being against her will. And it is for a large part that I am hanging my hat on my decision that, yes, there has been proof by a preponderance of evidence that sexual abuse has occurred here.

In arguing for reversal, K.M. outlines inconsistencies in in the record. For instance, B.F.'s testimony sometimes conflicts with the messages she was sending to K.M. She omitted some events from her testimony, like a kiss she and K.M. shared earlier that day, until she was asked about them directly. She denied knowing what some expressions she used in messages to K.M. meant and testified

she did not know what she intended in other messages. And although B.F. agreed that she would wake up if someone tried to rouse her after taking her medication, she did not remember how her onesie was removed.[1]  K.M. also argues the juvenile court ignored the lack of any citation or a delinquency charge being brought against him, claiming it is "indicative of a lack of probable cause or even reasonable basis to cite or arrest K.M. for any wrongdoing." Finally, he argues the court gave too much credence to B.F.'s behavior after that night in resolving the conflict in the testimony.

Although K.M.'s arguments have some merit, resolution falls heavily on our standard of review. Whether we would reach a different conclusion is irrelevant; the question is not whether the evidence could support a different finding, it is whether it supports the finding made. *See Postell v. Am. Fam. Mut. Ins. Co.*, 823 N.W.2d 35, 41 (Iowa 2012). "[W]e are required to view the evidence in the light most favorable to the judgment and liberally construe the court's findings to uphold, rather than defeat, the result reached." *Hutchison v. Shull*, 878 N.W.2d 221, 230 (Iowa 2016) (citation omitted). And when, as here, the evidence conflicts, it is for the fact finder to weigh it and decide credibility. *See In re D.C.L.*, 464 N.W.2d 881, 883 (Iowa 1991). Following these precepts, we conclude that a reasonable person could find it more likely—or less doubtful—that K.M. committed a sexual act against B.F.'s will. On this basis, we must affirm.

**AFFIRMED.**

---

[1] B.F. agreed that removing the onesie required unzipping it and pulling her arms and legs free.