**IN THE COURT OF APPEALS OF IOWA**

No. 23-1761
Filed February 5, 2025

**T.F., Jr. on behalf of E.F., a minor,**
 Plaintiff-Appellee,

**vs.**

**C.G.,**
 Defendant-Appellant.
_____

Appeal from the Iowa District Court for Linn County, Elizabeth Dupuich,

Judge.


A party appeals a protective order entered pursuant to chapter 236.

**AFFIRMED.**


David R. Fiester, Cedar Rapids, for appellant.

T.F., Cedar Rapids, self-represented appellee.


Considered by Schumacher, P.J., and Buller and Langholz, JJ.

**BULLER, Judge.**

C.G. appeals from a protective order prohibiting contact with E.F., her ex-husband T.F.'s child. We first consider whether this appeal is moot and elect to proceed to the merits of C.G.'s challenge. Then, on our review, we affirm.

**Background Facts and Proceedings.** T.F. filed a petition for relief from domestic abuse, alleging C.G. abused his minor child, E.F. At the outset of the hearing, T.F. told the court he was interested in obtaining a no-contact order without a finding of domestic abuse—in other words, a consent order. *See* Iowa Code § 236.5(2) (2023). Also at the start of the hearing, the court informed C.G. of her right to a continuance to obtain counsel, which C.G. twice declined. Then the court asked C.G. if she was interested in the consent order T.F. mentioned.

Rather than answer the question, C.G. made a number of statements about jurisdiction and argued domestic-abuse protective orders could not apply to children. The court told her the petition was properly filed, explained what the hearing would entail, and again asked C.G. if she wanted to consent to the order and avoid the evidentiary hearing and a potential finding of domestic abuse. C.G. told the court she wanted to "move forward" with the hearing.

T.F. testified that C.G. was his ex-wife and had been physically aggressive and violent with E.F. on multiple occasions. The allegations generally involved grabbing, shoving, and screaming at E.F. while E.F. was between the ages of four and seven. T.F. explained that he had asked C.G. to stay away from and not contact E.F., but C.G. picked E.F. up from school without his permission anyway.

Midway through the hearing, the court again reminded C.G. she could proceed by consent instead of the court making a finding of domestic abuse, and

the court instructed C.G. to speak up if she wanted to take that approach. C.G. never did so. Instead, she testified and gave a lengthy description of the breakdown in her relationship with T.F. and her contact with E.F.'s biological mother. She also denied the incidents of physical abuse.

After she testified, C.G. had a somewhat disjointed back-and-forth with the court about whether she would consent to a protective order. C.G. eventually asked the court a legal question about whether she would be "labeled as a domestic abuser," and the court declined to advise her but explained what the order would say. Rather than accept an order by consent, C.G. asked for a continuance. The court responded: "Well, it's too late. We already did the hearing." C.G. responded: "Then I don't consent." The court acknowledged C.G.'s lack of consent and found C.G. "committed domestic abuse" against E.F. and "represent[ed] a credible threat to [E.F.'s] physical safety." And the court entered a one-year protective order. C.G. appeals, and T.F. has not participated in the appellate process.

**Mootness**. The protective order expired on September 26, 2024. We invited the parties to file statements addressing mootness, and C.G. filed a statement generally referring to collateral consequences. She specifically cited state and federal firearms statutes but did not explain how concerns about firearms persist since the protective order expired. She also vaguely alluded to "difficulty in securing employment with children, elderly, and otherwise dependent persons," particularly in the field of healthcare. C.G. has left us in a tough spot evaluating whether she is suffering from ongoing negative effects from the order, as she offered no detail or evidence for this claim in her statement. In an abundance of

caution, we elect to credit her bare assertion that she is suffering collateral employment consequences, and we find this case is not moot.

But we also offer a practical observation for future litigants in appeals from chapter-236 orders: ask for expedited briefing. *See* Iowa Rs. App. P. 6.901(2), 6.902. After completion of the briefing process, the supreme court transferred this case to our court on August 29, 2024, and it was submitted without oral argument to our panel on September 11, 2024. It was not realistically possible for this court to issue a decision in the fifteen days between submission and expiration of the protective order—particularly given our other priority cases, including cases involving termination of parental rights, child custody, and indictable crimes. This is a recurring problem. *See, e.g.*, *McGuire v. McGuire*, No. 22-2067, 2024 WL 108867, at *1 (Iowa Ct. App. Jan. 10, 2024) (dismissing appeal of an expired chapter-236 order as moot and collecting cases doing the same).

**Merits.** As a threshold matter, C.G. is unhappy the district court did not enter a protective order by consent (absent a finding of domestic abuse), yet the record establishes she repeatedly declined the court's invitation to do just that. Now represented by counsel, she complains in her appellate brief that she wanted the consent order "but was talked out of it by the judge due to misleading statements." But we read the record differently. In our review, we find the district judge did the best she could answering C.G.'s questions without crossing the sometimes-fine line into offering legal advice. To the extent C.G. alleges some error in how the judge conducted the hearing, we find no basis for reversal.

As an academic point, we note it is unclear whether the district court heard this matter at law or in equity, which could impact our standard of review. *See*

*Bacon ex rel. Bacon v. Bacon*, 567 N.W.2d 414, 417 (Iowa 1997) (reviewing for substantial evidence when a chapter-236 petition was tried at law). But we conclude that issue is not dispositive here because, even on de novo review, we defer to credibility determinations like the district court's resolution of irreconcilable testimony. *See Hora v. Hora*, 5 N.W.3d 635, 645 (Iowa 2024).

In part, C.G also seems to challenge the sufficiency of the evidence supporting the order, given her complaints about the lack of corroborating evidence. But corroboration of victim testimony is not required in criminal cases for proof beyond a reasonable doubt. Iowa R. Crim. P. 2.21(3). And it certainly is not required under the preponderance standard here. *See* Iowa Code § 236.4(1). Regardless of corroboration, the district court was in the best position to determine credibility, and it was free to credit T.F.'s testimony and reject C.G.'s—as it necessarily did when entering the protective order. In light of the district court's implicit credibility assessment and the comparatively low burden of proof, we affirm the domestic-abuse finding.

C.G. also seems to argue the district court acted improperly in not continuing the hearing when she changed her mind and asked for a continuance after testifying. "A ruling denying a motion for a continuance is discretionary and calls for reversal only upon a showing of abuse of discretion." *State v. LaGrange*, 541 N.W.2d 562, 564 (Iowa Ct. App. 1995). In our review, we discern no abuse of discretion. The court clearly and repeatedly offered C.G. a continuance and the opportunity to seek counsel at the start of the hearing, and C.G. repeatedly declined. We cannot say it was an abuse of discretion for the court to deny C.G.'s later request, made only after the court had completed the evidentiary hearing.

The interests of judicial economy, the need to protect the party at issue, and the inherent time-sensitive nature of chapter-236 protective orders all weighed in favor of the court deciding the merits at that juncture.

We understand that, with the benefit of hindsight, C.G. may wish she had taken the court's initial offer of a continuance, proceeded with counsel, and accepted a consent order. But regret is no basis for relief. "The law does not judge by two standards, one of lawyers and another for non-lawyers. All are expected to act with equal competence. If a non-lawyer chooses to represent herself, she does so at her own risk." *In re Est. of DeTar*, 572 N.W.2d 178, 180 (Iowa Ct. App. 1997) (internal citations omitted). C.G. represented herself at her own risk here, and she has given us no basis to disturb the district court's ruling.

**AFFIRMED.**